# O. P. RICHARDSON v. JULIUS KIER.

| 34 | 63 |
| 85 | 70 |

DAMAGE FROM DITCHES.—Where K. owned a ditch which passed over the land of R., he was bound to so use it as not to injure R.'s land, and this irrespective of the question as to which had the older right or title ; and if, through any fault or neglect of K., in not properly managing and keeping his ditch in repair, the water overflowed or broke through the banks, and destroyed or damaged the land of R., by either washing away the soil or covering it with sand, K. was liable for such injury.

IDEM—RAVINE ADOPTED AS PART OF DITCH.—A ditch owner may only adopt a ravine, which is also a natural watercourse, as part of his line of ditch, to the extent of the capacity of his ditch to convey water. If an injury result from an overflow of the water of such ravine, not occasioned by its use as part of such ditch, the ditch owner will not be responsible therefor.

NEGLIGENCE.—" Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do. It is not absolute or intrinsic, but is always relative to some circumstances of time, place, or person."

LIABILITY FOR DAMAGE DONE BY WATER DISCHARGED OR SOLD FROM DITCH.— Where K. discharged water from his ditch above R.'s land in such place that it naturally would, and did, flow over and upon and injure R.'s land, K. is respon-

sible for such injury ; nor can K. shield himself from this responsibility because he may have sold this water at such place to miners, by whom it was used for mining purposes before, in the course of its flow, it reached R.'s land and occasioned such injury.

IDEM.—In such case, the fact that the miners so using the water contributed to and enhanced the injury sustained, and are joint tortfeasors with K., will not relieve K. from his liability or affect its measure.

APPEAL from the District Court, Fourteenth Judicial District, Placer County.

This was an action to recover damages sustained by plaintiff by the flooding with water, and the covering with sand and sediment, of his lands, situated on Coon Creek, in Placer County, to which he claimed the title in fee, from the defendant's ditches, and for an injunction.

The acts complained of were thus stated in the complaint, to wit :

" Plaintiff further avers, that the defendant is the owner of certain water ditches leading from Coon Creek, called the Independent Ditch and the North Sea Ditch ; said ditches sometimes called the Whisky Diggings Ditches. Said ditches are extended by defendant out of the said Coon Creek several miles above plaintiff's said land, and are used by defendant to divert the natural waters of Coon Creek, and also the waters of several ravines emptying into said ditches, over and through plaintiff's said lands, and discharge said waters so conveyed into Coon Creek within plaintiff's land before described. Said waters, but for said ditch, would not flow upon plaintiff's said lands, and would not do any damage to said lands.

" Plaintiff further avers, that defendant could easily carry said waters in said ditches without any injury to plaintiff's said lands ; that the same, if confined in proper banks and levees, and if said ditches were kept properly cleaned out, would pass over said lands without injury to the same. Plaintiff further avers, that defendant has heretofore, to wit : before the wrongs and injuries complained of, promised,

agreed, and bound himself, to build and keep up proper banks and levees along said ditches, and to keep said ditches cleaned out. And plaintiff further avers, that it is the duty of the defendant in conducting said waters over plaintiff's said lands so to confine them that they would not flow over or upon the lands of plaintiff, other than on the beds of said ditches.

" Plaintiff further avers, that the defendant, not regarding his duty to keep up the banks and levees, and to keep said ditches cleaned out, has not kept said banks or levees up, nor has he kept said ditches cleaned out, but has wholly neglected and refused so to do. Plaintiff further avers, that the defendant, since the 1st day of November, 1864, and on divers other days since that time, and continuously since that time up to the present time, has caused the said waters flowing in said ditches to flow over and upon said lands of plaintiff, and to convey upon them large deposits of sand, earth, and gravel, and he has by said means covered up and destroyed a large portion of said lands, to wit : about twelve acres of said lands, with said earth and gravel, so as to materially injure and damage it and wholly destroy a portion of the same, and the crops growing thereon, and render the said lands wholly valueless for any purpose. Plaintiff further avers, that all of said damage is occasioned and caused by the willful and negligent acts of defendant, by neglecting and refusing to keep in repair the banks and levees on said ditches, and by willfully and wrongfully flowing the said waters in said ditches while the same were filled up, and the banks and levees thereof wholly neglected and not in proper repair. Said acts of defendant are willful, malicious, and neglectful, and are done by defendant with full knowledge and intent to damage plaintiff and do the damage aforesaid.

" Plaintiff avers, that by the acts of defendant aforesaid, and by the overflow and covering up of the lands as aforesaid, he has already suffered damage in the sum of one thousand dollars. Plaintiff further avers, that if said acts of

9

the defendant are continued, that it will wholly destroy the lands lying on the bottom on the easterly side of said Coon Creek, and said damage will be irreparable.

" Plaintiff further avers, that the defendant threatens that he will, and plaintiff avers that he will, continue said acts of damage and injury to plaintiff, unless restrained by the order of this Court.

" These premises considered, plaintiff sues and asks for a judgment against defendant for the damages aforesaid, to wit: said sum of one thousand dollars. Plaintiff further prays for an order forever restraining and enjoining the defendant from the further commission of the acts aforesaid," etc.

The answer denied all the material averments of the complaint, except the possession by plaintiff of the land to which he claimed title, and the ownership and use by defendant of the ditches described in the complaint, except as to ."the North Sea Ditch," in respect to which the answer denied that for two years before suit the defendant had used it to convey the waters of Coon Creek, or any other waters, or for any purpose. The answer further denied that the ditches of the defendant pass over or through, or conduct water over or through plaintiff's land, or any part thereof. The answer then averred as follows:

" Defendant further answering avers that the Independent Ditch, mentioned in complaint, was excavated in 1853, and starts out of the creek called Dry Creek, at a point about ten miles easterly of the land described in the complaint, and passes over public lands of the United States to a mining district called Whisky Diggings, lying about two miles easterly from the land described as plaintiff's in the complaint, and is about sixteen miles in length, and of the capacity to carry about one hundred and twenty inches of water; that defendant, and those whose title he has acquired, have continuously since said ditch was excavated used the same for

the purpose of selling water to miners during the wet season, and that there has been no water flowing in the same during the dry season.

"Defendant further answering avers that the country through which said ditch passes is mineral land containing gold, and is, and during all of said time has been public land of the United States, and that at said diggings miners have been engaged in digging for gold, and the only use plaintiff has made of said water is to sell the same at the ditch to miners, who purchased the water at the ditch from plaintiff, and conveyed the same to their own claims, and there used it as they saw fit.

"Defendant further avers that he has always kept said ditch in good repair, and since November 1st, 1865, has not run his ditch more than half full of water from Dry Creek, and that the only times when the ditch would be full of water would be when there was a heavy fall of water, and the rain water from the hill sides and ravines would fill the same.

"Defendant further answering avers that the lands described as plaintiff's in the complaint, lie about two miles from defendant's ditch at its nearest point, and that the country easterly of said land is the public land of the United States, and abounds in gold, and defendant has only been engaged in diverting and selling water to miners on the public lands."

The cause was tried before the Court and a jury. On the trial the plaintiff introduced in evidence a patent from the State of California to L. R. and T. L. Chamberlain of the lands described in his complaint, dated March 21st, 1863; also, a deed dated July 11th, 1864, from the said Chamberlains to plaintiff, of the same lands; also, a deed dated May 12th, 1864, from John and Kate Ziegenbein to the defendant, of the ditches described in the complaint. He also introduced in evidence, under the objection of the defendant on the ground of irrelevancy, and under the defendant's

exception to its admission, the following article of agreement, to wit:

" Article of agreement made this, the 19th day of March, 1863, between John Ziegenbein, of the first part, and T. L. and L. R. Chamberlain, of the second part, witnesseth: That whereas, a suit is now pending in the District Court of the Eleventh Judicial District, in the County of Placer, wherein said Ziegenbein is plaintiff and said T. L. and L. R. Chamberlain *et als.* are defendants, to enjoin the Surveyor General and Register of the State Land Office from issuing a patent to said T. L. and L. R. Chamberlain for certain tracts of land specified in the complaint in said action; and whereas, said parties have agreed to settle and adjust the matters in controversy in said action, and other matters of controversy between them; and whereas, the said Ziegenbein is the owner of two certain water ditches in the County of Placer, known as the 'Independent' and 'North Sea' Ditches, which flow over and through certain lands owned and claimed by said T. L. and L. R. Chamberlain. Now, the said T. L. and L. R. Chamberlain hereby agree to execute to said Ziegenbein a good and sufficient deed of conveyance, for a tract of land of about three acres in extent, which shall include the house, store, barn, and other improvements occupied by said Ziegenbein, upon a tract of land claimed by said T. L. and L. R. Chamberlain, the exact description of which the parties are unable to give, but which is to be correctly described in the deed to be thus executed, said deed to be executed within a reasonable time.

" And it is further agreed by and between said parties, that the said T. L. and L. R. Chamberlain shall, and they do, hereby release the said John Ziegenbein from all damages, claim, or liability to them, or either of them, for or by reason of or caused by the flow of water and tailings from said ditches, or either of them, over any and all tract and tracts of land owned or claimed by said T. L. and L. R. Chamberlain, or either of them, or in which they or either

of them have any right, title, claim, or interest whatever, and also hereby release the said Ziegenbein and his sureties, Thomas Fairchild and S. W. McConaha, from all liability, claim, or damage upon the injunction bond executed by said sureties and filed by said Ziegenbein in said action, in said Placer District Court, and they also hereby release the said Ziegenbein from all claim or liability for any damage or injury which may be caused by the flow of water and tailings from said ditches, as they now run over any and all lands owned or claimed by said T. L. and L. R. Chamberlain, or either of them, or in which they or either of them have any interest, from this date up to the first day of July, A. D. 1863, after which time no water shall flow in any of said ditches, except as hereinafter provided, and after this date no water shall be sold upon any of the inclosed lands of the said T. L. and L. R. Chamberlain.

" The said T. L. and L. R. Chamberlain hereby further grant, sell, and convey to the said Ziegenbein, his heirs and assigns forever, the right and privilege of flowing the water and tailings from the said ditches, and from the mining and other claims in which said water may be used, over and through the tract of land described in said complaint filed in said cause, and described as the Southeast Quarter of Section Number Fourteen. It being understood that said ditch is to run where it now runs through said quarter, and in no other course or direction, nor upon any other than its present bed ; and the said Ziegenbein is to keep the ditch and its levees and banks in good repair and order until it reaches Coon Creek, and he is to be responsible for no damage which it or its waters may do after it reaches Coon Creek.

" And the said John Ziegenbein hereby agrees, in consideration of the premises, to dismiss the said action, each party to pay his own costs.

" In testimony of all which, we have each of us hereto set our hands and seals this date above written.

" JOHN ZIEGENBEIN.          [SEAL.]

" THOS. L. CHAMBERLAIN."    [SEAL.]

The following were part of the instructions of the Court to the jury, given at the request of the defendant, under the exceptions of the plaintiff, to wit:

" 1. The proofs, before plaintiff can recover damages, must prove to your satisfaction that he has sustained damages by the act of the defendant.

" 2. If defendant sold water at his ditch to the quartz mill company and parted with his right to the water at his ditch, and the quartz mill company took the water at the ditch and used it afterwards as they pleased, defendant is not liable for damages plaintiff may have sustained, if any, from the use of the water by the quartz mill company.

" 3. If the jury find as a fact that the defendant's ditch is on the public mineral lands, and that when defendant made sales of the water from his ditch to miners or others, he sold the water at the ditch and merely measured it to the purchaser at the ditch, and the purchaser took it from the ditch and conveyed it by one of his own ditches to the place where he wished to use it, and used it as he pleased for mining, then the defendant is not liable for any damage that might result to plaintiff from the use of the water by the miner.

" 4. If the jury find as a fact that the miners who used the water from defendant's ditch, were at work on the public mineral lands about two miles from plaintiff's land, and that the water after leaving the claims of the miners flowed down a ravine which was a natural outlet, down to plaintiff's land, then defendant is not liable for the damage, if any, plaintiff may have sustained by the use of the water by the miners.

" 5. The plaintiff avers in his complaint that the defend-

ant is the owner of two ditches, called the Independent Ditch and the North Sea Ditch; and avers, also, that the defendant by these ditches takes the water out of Coon Creek several miles above his land, and causes the same to flow on to plaintiff's land, and to convey thereon earth, sand and gravel. Plaintiff, if he recovers at all, can only recover damage for such injury as he has sustained by the act of defendant in washing sediment on to plaintiff's land by the water taken out of Coon Creek, and the ravines on the line of the ditches, through the Independent and North Sea Ditches.

." 6. If the defendant, in the use and management of his ditch, has used ordinary care and prudence, and has not been guilty of negligence, he is not liable for damages which may have resulted from the water of his ditch flowing off from the public lands, when they had been used for mining, and running on to plaintiff's land, carrying sand and earth there."

The verdict and judgment were for the defendant, and the plaintiff moved for a new trial, on the grounds, to wit: first, the insufficiency of the evidence to justify the verdict; and, second, errors in law occurring at the trial, and excepted to by the plaintiff. The motion was denied, and the plaintiff appealed from the order denying said motion and from said judgment.

*Jo Hamilton,* for Appellant.

Defendant's first instruction given is not law. The jury are instructed that the damage must be occasioned by the act of the defendant as contradistinguished from his *omission.* It was not the act of the defendant that we complain of. It was his refusal and failure to act; *i. e.,* his wanton negligence, carelessness, and omissions that caused the damage, and not acts done by him. (*Hoffman* v. *T. W. Co.,* 10 Cal. 416; *Wolf* v. *St. Louis Ind. Co.,* 10 Cal. 344; *Turner* v. *Tuolumne Water Co.,* 25 Cal. 403; and other cases cited.)

Defendant's third instruction given is not law. If, when defendant sold the water to miners, he parted with it, and never afterwards acquired it, I deny that he would not then be liable for the results which would necessarily follow, and which would be known to him when selling them.

Defendant's fourth instruction given is not law. The ravine was as much a part of defendant's ditch as any other part of it, and if defendant took up the water, in its changed condition, from use in the mines, and appropriated it by his ditch, or by the ravine as part of his ditch, then he would be liable for the damage wrought by it.

Defendant's sixth instruction given is not law. The instruction wholly ignores plaintiff's prior possession, which runs back through his ancestors to 1850, while the ditch only dates to 1855 or 1856. We were in a condition, as first locator, to invoke the rule, *Qui prior est in tempore, potior est in jure.* (*Wixon* v. *Bear River and Auburn Water Co.,* 24 Cal. 367, and cases cited.)

*C. A. Tuttle,* for Respondent.

The respondent owned a ditch on public mineral land. In a valley, some two miles from the ditch, appellant has a ranch. He claimed that his land was injured by sediment carried down by the water. The evidence shows that respondent had but one agent, and that the miners bought the water at the ditch and conducted it to their claims, and used it as they pleased, and that the respondent parted with his right to the water at the ditch when he sold it. It would be sufficient for the purposes of the case to say that the evidence tended to show this.

If the *miner* is a trespasser, in order to make the ditch owner liable, he must in some way be connected with the wrongdoer. He must either be principal and the miner his agent, or he must in some way advise the commission of the trespass. The instructions, of which appellant complains, assume that the ditch owner has parted with his right to the

water, and that the miner is the owner of the same and controls entirely its use. The doctrine of *respondeat superior* cannot apply, for the ditch owner has no further control. He cannot prevent the trespass except by refusing to sell the water. There is nothing in the instructions which imply that the ditch owner even knows when he sells the water that the miner is to use it to wash sediment on to appellant's land. It is not the water as it leaves the ditch which does the damage, but the sediment with which it is loaded after it becomes the property of the miner. The miner takes the water where he pleases. He may or he may not do harm with it. He is not the agent of the ditch owner, nor is he acting under his advice.

The case of *Boswell* v. *Laird,* 8 Cal., is a case much stronger for appellant than this, and yet the Court held that there was no liability.

By the Court, SANDERSON, J.:

There is some ambiguity in the complaint, for which the plaintiff must be held responsible. It contains a paragraph which evidently has some reference to the agreement of the 19th of March, 1863, between Ziegenbein and the Chamberlains, as if the pleader intended to make it the foundation, in part, of his action, but the agreement is not declared on *in hæc verba,* nor according to its legal effect, and we cannot regard the action as founded upon it in any respect. In this view it becomes unnecessary to consider the effect of that agreement further than to say, that it is evidence tending to show that the ditch leading from Whisky Ravine to Coon Creek is the property of the defendant. We shall, therefore, for the purposes of our decision, consider the action as founded upon an alleged violation by the defendant of the maxim *sic utere tuo ut alienum non lædas.*

As affecting the liability of the defendant, the case made by the pleadings and the evidence has two aspects: first,

10

regarding the ravine and the ditch leading from it to Coon Creek as a part of the Independent Ditch; and, second, regarding the Independent Ditch as terminating at the ravine.

Under both these aspects, we assume that the damages sustained by the plaintiff resulted from an overflow from the ditch, or ditch and ravine, and not from an overflow of Coon Creek. Of course, for damages caused by the latter, if any, the defendant is in no way responsible, so far as the case shows.

If the defendant has adopted the ravine as a part of his ditch, so that his ditch commences at Coon Creek, several miles above the plaintiff's farm, and, crossing a part of his farm, terminates in Coon Creek, at a point below, he is bound to so use his ditch as not to injure the plaintiff's land, irrespective of the question as to which has the older right or title. He is bound to keep it in good repair, so that the water will not overflow or break through its banks and destroy or damage the lands of other parties; and if, through any fault or neglect of his in not properly managing and keeping it in repair, the water does overflow or break through the banks of the ditch and injure the land of others, either by washing away the soil or by covering the soil with sand, the law holds him responsible. This, however, is to be taken with the qualification that where a ravine or natural watercourse is taken or adopted by a ditch owner as a part of his line of ditch, he is to be understood as so doing only to the extent of the capacity of his ditch. If there is natural water running in the ravine so adopted, he is not responsible for an overflow, so far as it may have resulted from water not discharged into the ravine or watercourse by him. In other words, the overflow must have resulted in consequence of his use of the watercourse as a part of his ditch, or he is not responsible. Hence, if the defendant's ditch commences and terminates at different points on Coon Creek, and Whisky Ravine is a part of it, the defendant is bound to see that the water conveyed by him through it does not over-

flow or break through; and if it does, through any fault or neglect of his, he is liable; but if the overflow would have taken place independent of his ditch, and limited use of the ravine as a part of his ditch, he is not liable. In the latter event any damages resulting to the plaintiff would be the effect of natural causes, for which the defendant could not be held responsible. "Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do; moreover it is not absolute or intrinsic, but always relative to some circumstance of time, place or person." (Broom's Legal Maxims, 329.)

If we assume, as claimed by the defendant, that his ditch terminates at the point where it intersects Whisky Ravine, his duty and responsibility are not materially varied. If the plaintiff's land has been overflowed and covered with sand, and thereby rendered less valuable by reason of the defendant's having diverted the waters of Coon Creek, and by means of his ditch caused them to be discharged into Whisky Ravine instead of Coon Creek, thereby increasing the volume of water which would have otherwise flowed through the ravine, the defendant is responsible. Nor can he shield himself from responsibility because he may have sold the water to miners, who used it for mining purposes before it reached the ravine, if the water is delivered to the miners at a point from which it must unavoidably run into the ravine, and necessarily result in the injury complained of. In that event the miners are not the only tortfeasors. The act of the defendant is as wrongful as if he discharged the water into the ravine without first selling it. Without the water there would be no damage done, and it is furnished, or sent upon its errand of mischief, by the act of the defendant. The miners may be joint tortfeasors, but that question is not involved in this case. If the defendant finds it necessary or convenient to discharge the water from his ditch into Whisky Ravine, or at a point from which they

will naturally. flow into that ravine, he is bound to see that no injury results to the plaintiff in consequence of his act, and if it does he is responsible.

It is not necessary to notice specially the instructions of the Court. It is obvious on inspection that they are not in all respects consistent with the foregoing views.

The order denying a new trial is reversed and a new trial granted.