[Civ. No. 45695. Second Dist., Div. Four. Sept. 18, 1975.]

HAROLD WAGNER et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA ex rel.
DEPARTMENT OF PUBLIC WORKS, Defendant and Respondent.

## COUNSEL

John J. Schimmenti for Plaintiffs and Appellants.

Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Hugh R. Williams, Robert W. Vidor and Ray M. Steele for Defendant and Respondent.

## OPINION

**THOMPSON, J.**\*—This is an appeal by unsuccessful plaintiffs in an action for inverse condemnation seeking damages for impairment of access by reason of freeway construction. In the first phase of a bifurcated trial, the court held that access to plaintiffs' properties had not been impaired in a fashion which is compensable. In this appeal from the resulting judgment for defendant State of California, plaintiffs contend: (1) a trial court's finding that freeway construction did not substantially impair access from plaintiffs' properties to the public streets is not supported by substantial evidence; (2) the trial court erred in excluding evidence of the value of plaintiffs' properties before and after the commencement of freeway construction; and (3) the trial court erroneously treated the issue of substantial interference with access to plaintiffs' properties as one of fact to be decided by the judge. Concluding that plaintiffs' contentions lack merit on the record before us, we affirm the judgment.

In 1965, plaintiffs constructed a 20-unit apartment building on their property at 404 North Garfield in the City of Pasadena, and a 53-unit apartment building on their property at 445 North Garfield. In September 1969, residents in the two apartment buildings had direct access on Garfield to the civic center of Pasadena two to four blocks to the south.

---

\*Assigned by the Chairman of the Judicial Council.

Garfield runs north and south with a dogleg one and one-half blocks south of plaintiffs' properties. To the east, the north-south streets were, first, Euclid Avenue, then Los Robles, and then Oakland. To the west, the north-south streets were, first, Marengo, then Summit, and then Raymond. The first east-west street to the north of plaintiffs' properties was Villa. The first east-west street to the south was Pearl. Pearl Street was two blocks in length, extending only from Garfield on the east to Summit on the west. Summit terminated one block south of Pearl. Euclid, Los Robles, Oakland, Marengo, and Raymond were part of the general grid pattern of streets in Pasadena.

In October 1969, Garfield was closed immediately south of its intersection with Pearl because of the pending construction of the 210 Freeway by defendant. After Garfield was closed, access from plaintiffs' properties to downtown Pasadena was by one of three routes: south on Garfield to Pearl, west on Pearl one block to Marengo, and then south on Marengo; north on Garfield to Villa, west one block to Marengo, and then Marengo south; or north on Garfield to Villa, east one block to Euclid, and then south on Euclid.

In 1972, Pearl Street was demolished for the freeway construction. Shortly afterward, Marengo was closed immediately south of its intersection with Pearl. Traffic on Marengo was diverted to either Los Robles, three blocks to the east, or Fair Oaks, three blocks to the west. In November 1972, construction began on a frontage road that will connect Los Robles and Marengo. The estimated date of completion was July 1975. In June of 1973, work was commenced on a bridge over Los Robles. While access on Los Robles was restricted to one lane each way, the road remained open. The freeway construction made access from downtown Pasadena to plaintiffs' properties less direct to foot and vehicular traffic and the apartment buildings less visible to prospective tenants.

When the section of the 210 Freeway which is here involved is completed, there will be bridges over the freeway at Marengo and Los Robles. Garfield will connect with the frontage road on the south. Access from plaintiffs' properties to downtown Pasadena will then be by way of Garfield south to the frontage road and then to Marengo or Los Robles, or north to Villa and then to either of those streets.

On January 23, 1973, plaintiffs and others filed a claim with the State Board of Control. The claim seeks $900,000 in damages. It alleges: "The

State of California . . . during the course of the construction of a freeway through Pasadena, California, at the crossing which is known as Garfield Street, removed Garfield Street within the boundary of the freeway project. The State of California informed the claimant that it would supply the claimant's properties with an alternate, equivalent means of access to downtown Pasadena across the freeway right of way. The State of California . . . failed to supply the claimant with an alternate means of access to downtown Pasadena within a year of the filing of this claim. As a result of the acts of the State of California, there has been a substantial interference with the use of the claimant's two properties as apartment houses."

The claim was denied on February 20, 1973. On April 12, plaintiffs filed the complaint which commenced the case at bench. The first cause of action sounds in inverse condemnation. It alleges that defendant State of California announced an intention to supply plaintiffs with an alternative means of access to downtown Pasadena for plaintiffs' properties and unreasonably delayed in providing the alternative access thereby damaging the properties. Paragraph VI of count I of the complaint states: "The announced intention of the defendants, along with its unreasonable delay in completion of its condemnation, have resulted in an inverse condemnation . . . ." The second cause of action alleges nuisance created by the removal of access to the properties. The third cause of action claims damages for removal of access by "substantial impairment of the plaintiffs' right of access to the general system of public streets." The fourth cause of action is framed against contractors who are not parties to this appeal.

A joint pretrial statement filed by the parties states that the issues to be tried are: (1) whether the State of California announced an intention to supply plaintiffs with an alternative means of access to downtown Pasadena; (2) whether the state supplied the alternate means of access; (3) whether there was unreasonable delay in furnishing alternative access; (4) whether the construction of the freeway resulted in a substantial impairment of access to and from plaintiffs' properties; (5) whether the State of California has taken an easement belonging to plaintiffs; (6) whether construction of the freeway resulted in a nuisance for which plaintiffs are entitled to compensation; and (7) damages due plaintiffs, if any.

The statement of issues to which the parties agreed is included in a pretrial order. The order states that the issues other than damage are to

be determined at "a legal issue trial set for February 11, 1974." The order sets trial of the issues of damage for June 10, 1974. The record does not show any objection by plaintiffs to the pretrial order or any demand for a jury trial by them at the "legal issues" phase of the bifurcated trial.

Trial of the "legal issues" commenced on February 13. The trial court sustained defendant's objection to testimony offered by plaintiffs to show diminution in value of their properties and loss of rental income resulting from the freeway construction. On August 26, 1974, the trial court filed its findings of fact. It found that at all times after October 1969 Garfield Avenue was permanently closed at a point south of its intersection with Pearl Street, and Marengo Avenue was temporarily closed within one year of the filing of plaintiffs' complaint. The court found, also, that there was no impairment of access of plaintiffs' properties into the Pasadena system of public streets by way of Garfield Avenue and Villa Street, and that the frontage road will intersect Garfield on the south and will also intersect Los Robles, Fair Oaks, and Marengo, as well as other streets to the east. The court determined that the completed freeway and frontage road will result in no impairment of access to plaintiffs' properties. It found no unreasonable delay in construction and against plaintiffs' contention that the state informed plaintiffs that alternate routes would be supplied. The court found that no nuisance had been created and that no easement had been taken. Finally, the findings reflect that defendants named in the complaint other than the state had been dismissed.

The trial court accordingly entered its judgment for defendant at the close of the first phase of the bifurcated trial. This appeal followed.

### Substantial Evidence

The record refutes plaintiffs' contention that substantial evidence does not support the key finding of the trial court of lack of substantial impairment of access from plaintiffs' properties to the public streets.

In the context of the case at bench, a property owner is entitled to compensation for impairment of access only when he shows "a *substantial impairment* of his right of access to the general system of public streets." (*Breidert* v. *Southern Pac. Co.,* 61 Cal.2d 659, 664 [39 Cal.Rptr. 903, 394 P.2d 719].) "[L]oss of access to the next intersecting street does not necessarily create a cause of action for impairment of the general right of access . . . ." (*Breidert* v. *Southern Pac. Co., supra,* at p. 666.)

Neither does street construction which changes the traffic flow on the street which abuts a parcel of property. (*People* v. *Ayon,* 54 Cal.2d 217, 224 [5 Cal.Rptr. 151, 352 P.2d 519].) Street improvement which increases circuity of travel by about one-half mile is not compensable. (*People* ex rel. *Dept. Pub. Wks.* v. *Romano,* 18 Cal.App.3d 63, 73 [94 Cal.Rptr. 839]; see also Condemnation Practice in Cal. (Cont. Ed. Bar 1973) § 5.18.)

■ Here plaintiffs established only that, during the course of freeway construction, traffic to and from their properties was required to take a more circuitous route by traveling a half block north and two to three blocks east or west. After completion of the freeway, travel will be less circuitous. On that showing, the trial court could properly find that plaintiffs had failed in their burden of establishing the substantial interference with access to their properties that is necessary to their recovery.

### Exclusion of Valuation Evidence

■ Plaintiffs' contention of trial court error in exclusion of evidence designed to establish diminution in value of plaintiffs' properties and loss of rental income occasioned by freeway construction lacks merit.

The pretrial order limited issues at the first phase of the bifurcated proceeding to those related to the existence of a right to compensation. Determination of the amount of compensation to which plaintiffs would be entitled if they prevailed at the first phase was deferred. No objection by plaintiffs to the bifurcation appears in the record.

The first phase of the trial was thus concerned with the presence or absence of a substantial impairment of access to plaintiffs' properties caused by the freeway. ■ Impairment of access is essentially a physical fact. ■ Evidence of diminution of value or loss of income is a compound of matter which may be significant at a later stage of the proceeding to establish substantial damage and the amount which is recoverable and matter which, at best, has only tangential relevance to the issues at the first phase of the trial. In these circumstances Evidence Code section 352 permitted the trial judge to exclude evidence at the first phase since its very slight probative value was outweighed by the probability of prejudice and undue consumption of time that would result if the evidence were received.

*Aaron* v. *City of Los Angeles,* 40 Cal.App.3d 471 [115 Cal.Rptr. 162] and *Parker* v. *City of Los Angeles,* 44 Cal.App.3d 556 [118 Cal.Rptr. 687], relied upon by plaintiffs to sustain their position of trial court error do not do so. Both *Aaron* and *Parker* discuss evidence of diminished value but do not consider the admissibility of that evidence at the first phase of a bifurcated trial. In each case the valuation evidence is discussed in the context not of substantial impairment of property, but in the context of substantial damage caused by the impairment.

### Substantial Interference as Issue of Fact or Law

Plaintiffs contend that the trial court applied an improper standard in the first phase of the trial. They note that the court treated the issue of the existence of substantial impairment of access as one of fact to be determined by the judge and argue that the judge was required to present the issue to the jury at the second phase of the trial if the evidence was such that a jury could find the fact requisite to recovery.

The argument misstates the law. ■ The question of substantial interference with access is one to be determined by the trial judge and only if he finds from the evidence that there was a substantial impairment is the amount of compensation to be awarded a jury question. (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 664; *Aaron* v. *City of Los Angeles, supra,* 40 Cal.App.3d 471, 484.)

### Disposition

The judgment is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied October 17, 1975, and appellants' petition for a hearing by the Supreme Court was denied November 12, 1975. Mosk, J., was of the opinion that the petition should be granted.