[No. H002005. Sixth Dist. Nov. 23, 1988.]

MICHAEL J. LUSSIER et al., Plaintiffs and Appellants, v. SAN LORENZO VALLEY WATER DISTRICT, Defendant and Respondent.

COUNSEL

Robert H. Darrow for Plaintiffs and Appellants.

Timothy J. Schmal and Gassett, Perry & Frank for Defendant and Respondent.

OPINION

CAPACCIOLI, J.—

### Statement of the Case

Plaintiffs Michael and Sally Lussier filed a complaint against, inter alia, the San Lorenzo Valley Water District (the District) seeking to recover for damages suffered when timber, debris, and water washed from the District's land onto plaintiffs' property during a heavy rainstorm in 1982. The complaint asserted five causes of action: (1) negligence, (2) maintenance of a dangerous condition (Gov. Code, § 835), (3) nuisance (Civ. Code, §§ 3479 and 3501; Code Civ. Proc., § 731), (4) trespass, and (5) inverse condemnation (Cal. Const., art. I, § 19).

At trial, the court granted the District's motion for a nonsuit on the nuisance, trespass, and inverse condemnation causes of action. The jury then returned a defense verdict on the remaining claims, and plaintiffs filed this appeal.

Plaintiffs claim that the trial court erred in (1) giving proximate cause rather than legal and concurrent cause instructions,[1] (2) granting the District's motion for nonsuit, (3) admitting irrelevant impeachment testimony, and (4) giving the case to the jury too late in the day.

We affirm the judgment.

### Statement of Facts

The basic facts are undisputed. The District owns watershed land uphill from plaintiffs' house and land. Clear Creek and Sweetwater Creek flow through the watershed. Clear Creek continues onto and across plaintiffs'

---

[1] Plaintiffs withdrew this contention at oral argument, and we do not address it.

land, while Sweetwater Creek runs along plaintiffs' border. Both creeks then converge below plaintiffs' land.

In early January 1982, there was an unusually heavy rainstorm that caused severe erosive damage to plaintiffs' house and surrounding property.

At trial, plaintiffs presented evidence to show that the damage was caused by timber and debris on the watershed that had been downed in a freak snowstorm in 1974 and which the District had allowed to accumulate in the creek beds despite knowledge that the accumulation constituted a flood danger to downstream neighbors. According to plaintiffs, the heavy rain in January 1982 caused the creeks to swell and carry the accumulated debris downstream where it battered plaintiffs' house and other structures and clogged the creeks, diverting them onto plaintiffs' land.

The District, on the other hand, presented evidence to show, inter alia, that the downed timber and debris, whatever its origin, posed no foreseeable danger to plaintiffs and/or that plaintiffs' damage was inevitable given the amount of rain that fell.

## I. Nonsuit

A motion for nonsuit is tantamount to a demurrer to the evidence and presents a question of law: whether the evidence offered in support of the plaintiffs' case could justify a judgment in the plaintiffs' favor. (*Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268, 272 [219 Cal.Rptr. 836].) In reviewing the propriety of the trial court's order granting the District's motion for nonsuit, we must accept plaintiffs' evidence as true, unless it is inherently incredible, and resolve all conflicts and reasonable inferences in their favor. (*Ibid.; Van Zyl* v. *Spiegelberg* (1969) 2 Cal.App.3d 367, 371-372 [82 Cal.Rptr. 689].)

### A. Nuisance

Plaintiffs argue that they presented sufficient evidence to support a finding that the District maintained a nuisance on its property and that it was error not to submit this claim to the jury.

The District claims that nonsuit was proper as a matter of law because under the common law, a possessor of land is immune from liability to those outside the premises for harm caused by *natural conditions* of the land. ██ (See Prosser & Keeton, Torts (5th ed. 1984) § 57,

pp. 390-391 (hereafter Prosser); Rest.2d Torts, §§ 363, subd. (1), 840, subd. (1); 58 Am.Jur.2d, Nuisances, § 27, pp. 589-590.)[2]

■ In response, plaintiffs do not claim that this rule is inapplicable because its damages were caused by an artificial condition; rather they claim that the rule was abolished in *Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d 358. This claim has merit.

In *Sprecher, supra,* our Supreme Court explained that underlying the rule of absolute immunity was the notion that in the absence of a special relationship, one need not take affirmative measures to protect others and mere possession of land does not create a duty to protect others from a dangerous natural condition thereon. The court observed, however, that this rationale had lost whatever validity it once had in light of cases dealing with the duty of possessors of land to take affirmative steps to protect those coming upon their land from both natural and artificial conditions. (30 Cal.3d at pp. 367-370.)

The court also noted that the common law rule was inconsistent with the policy embodied in Civil Code section 1714, namely, that a person should be liable for injuries caused "by his want of ordinary care . . . in the management of his property or person." The court opined that this policy outweighed any reason for distinguishing between injuries caused by natural and artificial conditions on land. (30 Cal.3d at pp. 361-372.) Thus, it held that liability could arise from the breach of a duty of care concerning, that is, a negligent failure to correct, a dangerous natural condition of one's land. (*Id.* at pp. 371-372, 373.)

The District claims that because the Supreme Court carefully and expressly focussed its holding on negligence actions, the common law rule still provides absolute immunity from liability in *nuisance* actions. We disagree.

Civil Code section 3479 defines an actionable nuisance as "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the

---

[2]On the other hand, liability based on "artificial conditions" is determined according to ordinary principles of negligence. (*Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 362 [178 Cal.Rptr. 783, 636 P.2d 1121].)

"The term ' "[n]atural condition of the land" is used to indicate that the condition of land has not been changed by any act of a human being . . . . It is also used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them.' (Rest.2d Torts, § 363, com. b.)" (30 Cal.3d at p. 362, fn. 3.)

Conversely, " 'a structure erected upon land is a non-natural or artificial condition, as are trees or plants planted or preserved, and changes in the surfaces by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces.' (Rest.2d Torts, § 363, com. b.)" (30 Cal.3d at p. 362, fn. 4.)

comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, . . . ."

The basic concept underlying the law of nuisances is articulated in the ancient maxim *sic utere tuo ut alienum non laedas,* that is, so use your own as not to injure another's property. (*Richardson* v. *Kier* (1867) 34 Cal. 63, 73; *Kall* v. *Carruthers* (1922) 59 Cal.App. 555, 560 [211 P. 43]; Civ. Code, § 3514[3] ; 47 Cal.Jur.3d, Nuisances, § 1, p. 199; 66 C.J.S., Nuisances, § 8, p. 740.)

■ More specifically an action for a private nuisance[4] is designed to redress a substantial and unreasonable invasion of one's interest in the free use and enjoyment of one's property. (Rest.2d, *supra,* § 821D and com. a-d, pp. 100-102; Powell on Property (1987) § 704[1], p. 64-2 (hereafter Powell); Prosser, *supra,* §§ 87 and 88, pp. 619, 626; 7 Witkin, *supra,* § 91, p. 5314; 66 C.J.S., *supra,* § 1, p. 729.)

■ Although the central idea of nuisance is the unreasonable invasion of this interest and not the particular type of conduct subjecting the actor to liability, liability nevertheless depends on some sort of conduct that either directly and unreasonably interferes with it or creates a condition that does so. (Rest.2d, *supra,* § 822, com. a, p. 109; see 7 Witkin, *supra,* § 91, p. 5314; Powell, *supra,* § 704[2], pp. 64-64(9); 66 C.J.S., *supra,* § 1, p. 729; 3 Miller & Starr, Current Law of Cal. Real Estate (1977) § 21.3, p. 513 (hereafter Miller).) "The invasion may be intentional and unreasonable. It may be unintentional but caused by negligent or reckless conduct; or it may result from an abnormally dangerous activity for which there is strict liability. On any of these bases the defendant may be liable. On the other hand, the invasion may be intentional but reasonable; or it may be entirely accidental and not fall within any of the categories mentioned above. In these cases there is no liability." (Rest.2d, *supra,* § 822, com. a, p. 109; *Dufour* v. *Henry J. Kaiser Co.* (1963) 215 Cal.App.2d 26, 29 [29 Cal.Rptr. 871]; but see Prosser, *supra,* § 87, pp. 619-625 [nuisance liability should be based on only intentional conduct].)

As the Restatement explains, "In early tort law the rule of strict liability prevailed. An actor was liable for the harm caused by his acts whether that

---

[3] Civil Code section 3514 provides, "One must so use his own rights as not to infringe upon the rights of another."

[4] The Civil Code establishes two basic types of nuisances: public and private. (Civ. Code, §§ 3480 and 3481; see 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 93, p. 5316.) A public nuisance is one which affects any considerable number of persons, and the rest are private nuisances. (*Ibid.*) This case involves an alleged private nuisance.

harm was done intentionally, negligently or accidentally. In course of time the law came to take into consideration not only the harm inflicted but also the type of conduct that caused it, in determining liability. This change came later in the law of private nuisance than in other fields. Private nuisance was remediable by an action on the case irrespective of the type of conduct involved. Thus the form of action did not call attention to the change from strict liability to liability based on conduct. But the change has occurred, and an actor is no longer liable for accidental interferences with the use and enjoyment of land but only for such interferences as are intentional and unreasonable or result from negligent, reckless or abnormally dangerous conduct." (Rest.2d, *supra,* § 822, com. b, pp. 109-110; see Prosser, *supra,* § 4, pp. 20-23.)

In California, it is settled that where negligent conduct, i.e., conduct that violates a duty of care toward another, also interferes with another's free use and enjoyment of his property, nuisance liability arises. (See, e.g., *Spaulding* v. *Cameron* (1952) 38 Cal.2d 265, 266 [239 P.2d 625]; *Granone* v. *County of Los Angeles* (1965) 231 Cal.App.2d 629, 649-651 [42 Cal.Rptr. 34]; see also *Sturges* v. *Charles L. Harney, Inc.* (1958) 165 Cal.App.2d 306, 317-318 [331 P.2d 1072]; *Calder* v. *City etc. of San Francisco* (1942) 50 Cal.App.2d 837, 839-840 [123 P.2d 897]; 47 Cal.Jur.3d, *supra,* § 2, pp. 200-201; Rest.2d, *supra,* § 822, com. b, pp. 109-110.) ██ Applying this principle in light of the holding in *Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d 358, it follows, a fortiori, that where one's negligence concerning a natural condition of his land injuriously invades another's right to the use and enjoyment of his property, nuisance liability may arise. Thus, despite the *Sprecher* court's expressly limited focus on negligence actions, its holding extends further and leads ineluctably to the conclusion that a possessor of land is no longer absolutely immune from *nuisance* liability for injuries caused by natural conditions.

In reaching this conclusion we simply recognize that there is no reason to distinguish between the different interests and policies behind Civil Code sections 3479 and 1714. Both reflect values of substantial importance sufficient to outweigh the rationale behind the common law rule. Moreover, our conclusion acknowledges that as civilization advances in complexity and the development of land expands, the trend is to broaden the duties arising from natural conditions of the land in accordance with society's increasing regard for human safety. (See Note, *Nuisances from Land in its Natural Condition* (1943) 56 Harv.L.Rev. 772.)

██ We do not intend to suggest, however, that one is strictly liable for damages that arise when a natural condition of one's land interferes with another's free use and enjoyment of his property. Such a rule would, quite

anomalously, equate natural conditions with dangerous animals, ultrahazardous activities, or defective products, for which strict liability is reserved. (See generally 6 Witkin, Summary of Cal. Law (9th ed. 1987) Torts, §§ 1218-1315, pp. 653-774; Prosser, *supra,* §§ 75-78, pp. 534-559.) ▇ On the contrary, as we shall explain, where injury is allegedly caused by a natural condition, the imposition of liability on a nuisance theory, as a practical matter, requires a finding that there was negligence in dealing with it.[5]

▇ As noted above, a nuisance requires some sort of conduct, i.e. intentional and unreasonable, reckless, negligent, or ultrahazardous, that unreasonably interferes with another's use and enjoyment of his property. ▇ In determining what conduct by the District could have caused a nuisance, we consider the distinction between natural and artificial conditions on land to be a valid and useful analytical tool, even though it no longer provides an absolute limitation on liability.[6]

Here, plaintiffs alleged that the District "operated[,] supervised and controlled their watershed . . . in such a manner as to constitute a continuing nuisance by permitting large amounts of downed logs, slash, and vegetation to constitute a dangerous and threatening condition" that substantially diminished the usefulness and economic value of their property.

---

[5] We note, however, a unique line of cases, starting with *Grandona* v. *Lovdal* (1886) 70 Cal. 161 [11 P. 623], which holds that to the extent that the branches and roots of trees encroach upon another's land and cause or threaten damage, they may constitute a nuisance. (Accord: *Grandona* v. *Lovdal* (1889) 78 Cal. 611, 616 [21 P. 366]; *Parsons* v. *Luhr* (1928) 205 Cal. 193, 197 [270 P. 443]; *Stevens* v. *Moon* (1921) 54 Cal.App. 737, 740-743 [202 P. 961]; *Shevlin* v. *Johnston* (1922) 56 Cal.App. 563, 565 [205 P. 1087]; *Crance* v. *Hems* (1936) 17 Cal.App.2d 450, 451 [62 P.2d 395]; *Bonde* v. *Bishop* (1952) 112 Cal.App.2d 1, 5-6 [245 P.2d 617]; see 4 Witkin, *supra,* (9th ed. 1987), Real Property, §§ 424 and 425, pp. 607-608.) Superficially, these cases appear to impose nuisance liability in the absence of wrongful conduct.

None of these cases clearly reveals the origin of the rule it applies, although *its* roots undoubtedly go back to the English common law. (See generally McCleary, *The Possessor's Responsibilities as to Trees* (1964) 29 Mo.L.Rev. 159, 162-166, and authorities cited therein.) The later cases rely without discussion on the earlier ones, and the earliest one provides no ratio decidendi. None acknowledges the common law rule of immunity for natural conditions or discusses the distinction between natural and artificial conditions. (Compare with *Griefeld* v. *Gibralter Fire & Marine Ins. Co.* (1946) 199 Miss. 175 [24 So.2d 356, 357] [no liability for encroachment by natural growth].) Rather, these issues are either ignored or overlooked.

In any event, it seems that as a matter of historical tradition, courts have simply treated trees growing on or near borders as unique conditions and provided adjoining landowners with absolute protection from damage that arises from their natural encroachment. However, because these cases create an exception to the general principles governing imposition of nuisance liability, they should be strictly limited to their facts. So limited, they are readily distinguishable from this case.

[6] Of course, we are aware that in *Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d at page 371, the Supreme Court stated, "The distinction between artificial and natural conditions should be rejected." However, in its context, this statement means that liability may no longer be avoided because the defendant was negligent concerning a natural, as opposed to an artificial, condition.

Despite plaintiffs' use of verbs like "operate," "supervise," "control," and "permit," which tend to suggest intentional affirmative acts, the District did not assemble the allegedly dangerous natural accumulation of natural debris. Nor did possessing the land and letting nature take its course without interference render the resulting natural conditions thereon the fruits of affirmative conduct like dust from operation of a chicken farm (*McIntosh* v. *Brimmer* (1924) 68 Cal.App. 770 [230 P. 203]), noise and grit from a cement plant (*Markey* v. *Danville Warehouse & Lbr., Inc.* (1953) 119 Cal.App.2d 1 [259 P.2d 19]), noxious gasses from a creamery (*Fisher* v. *Zumwalt* (1900) 128 Cal. 493 [61 P. 82]), or noise and smoke from a gas works (*Judson* v. *L.A. Suburban Gas Co.* (1910) 157 Cal. 168 [106 P. 581]. Rather, since the District did not create the accumulation of debris, any alleged liability is really based on its failure to remove it and thereby prevent the harm it caused.

■ In general, however, the failure to protect another person is not tortious unless this failure violated a preexisting duty of care. (See Levy et al., Cal. Torts (1988) § 1.10[1], p. 1(39); 6 Witkin, *supra*, § 858, p. 220; Rest.2d, *supra*, § 314, com. c, p. 116-117.)

■ Clearly, the District had a duty to exercise reasonable care concerning the natural condition of its land. (Civ. Code, § 1714; *Sprecher* v. *Adamson Companies, supra*, 30 Cal.3d 358, 370-371.) However, unless the District breached this duty, it cannot be seen to have committed an act, let alone a tortious act. ■ ■ ■ ■ Therefore, since the accumulation of debris cannot be attributed to the District's own affirmative intentional conduct, the basis for the District's alleged nuisance liability would have to be negligence, that is, the District's negligent failure to remove the debris.[7]

Not surprisingly, the negligence and nuisance allegations in plaintiffs' complaint are essentially identical.[8] And at trial, counsel for plaintiffs agreed that the crux of the case was "whether the Water District failed to do what they [*sic*] should have done because the consequences here were fairly obvious."

At first glance it may appear that our analysis blurs the distinction between negligence and nuisance and contradicts the often-stated proposition

---

[7] Obviously, owning land and letting nature take its course thereon is not reckless or ultrahazardous activity.

[8] The complaint alleges that the District "managed, controlled[,] supervised [and] operated the said watershed property in a negligent manner[,]" in that "as a direct and proximate result of the acts and omissions" large amounts of mud, water, and natural debris were washed onto plaintiffs' property causing damage.

that one may be liable for a nuisance even in the absence of negligence. (*Curtis* v. *Kastner* (1934) 220 Cal. 185, 188 [30 P.2d 26]; *Shields* v. *Wondries* (1957) 154 Cal.App.2d 249, 255 [316 P.2d 9]; see 47 Cal.Jur.3d, *supra*, § 2, pp. 200-202.) ■ However, upon closer inspection, what emerges clearly is but confirmation of a long recognized fact: under certain circumstances, the worlds of nuisance and negligence overlap and the two become merely alternative legal theories for redressing what is really the invasion of a single primary right: the right to the undisturbed enjoyment of one's property and land. (See *Van Zyl* v. *Spiegelberg, supra,* 2 Cal.App.3d 367, 372.)

Thus, in *Calder* v. *City etc. of San Francisco* (1942) 50 Cal.App.2d 837, 839 [123 P.2d 897], the court observed, "While it is true that 'a nuisance and liability for injuries occasioned thereby may exist without negligence' [citation], it is likewise true that 'The torts of negligence and nuisance may be, and frequently are, coexisting and practically inseparable. . . . A nuisance in many, if not in most, instances, especially with respect to buildings or premises, presupposes negligence.' [Citations.]" (See *Sturges* v. *Charles L. Harney, Inc., supra,* 165 Cal.App.2d 306, 318.)

■ Indeed, our Supreme Court long ago opined that "[w]hen a person pursues a business, or does an act, perfectly lawful in itself, and not in its nature so hazardous, or so conducive to injury, as to be of the character of a nuisance, then he can be held liable for injuries to others arising therefrom only when he has been guilty of negligence in his manner of carrying on the business or doing the act." (*Barry* v. *Terkildsen* (1887) 72 Cal. 254, 256 [13 P. 657]; 3 Miller, *supra*, § 21:3, pp. 512-513.)

For example, in the absence of a malicious intent or negligence in removing vegetation from one's land and leaving it unirrigated, one is not liable for damage caused by sand and soil that blows or rain runoff that drains onto a neighbor's property. (See *Stewart* v. *Birchfield* (1911) 15 Cal.App. 378 [114 P. 999]; *Dufour* v. *Henry J. Kaiser Co., supra,* 215 Cal.App.2d 26.) Similarly, absent negligent maintenance of an irrigation ditch, one is not liable for failing to control weeds growing on its banks, whose seeds blow onto a neighbor's land. (See *Boarts* v. *Imperial Irrigation District* (1947) 80 Cal.App.2d 574 [182 P.2d 246] overruled on other grounds in *Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d at p. 362, fn. 9.)

■ This view—that proof of negligence may be essential to a claim of nuisance where the alleged nuisance involves a failure to act—is not unique. Elsewhere it has been noted that "[t]he duty of defendant with respect to a dangerous condition which he did not intentionally originate is not

absolute, but only to exercise such a degree of care and diligence as the danger demands[ ]" and that "where liability for the nuisance is predicated on the omission of the owner of the premises to abate it, rather than on his having created it, then negligence is said to be involved.[ ]" (66 C.J.S., *supra,* § 11, pp. 752, 755; 58 Am.Jur.2d, *supra,* § 3, pp. 557-558.)[9]

Relying on *Pfleger* v. *Superior Court* (1985) 172 Cal.App.3d 421 [218 Cal.Rptr. 371], plaintiffs argue that the District may be liable on a showing of "less" than negligent conduct. However, plaintiffs' reliance is misplaced both because they misunderstand *Pfleger* and because *Pfleger* is inapposite.

In that case the plaintiffs suffered flood and slide damage during the same storm involved in this case. They sued, inter alia, various public entities responsible for uphill property, alleging that their failure to provide flood and slide control facilities created a dangerous condition and constituted a nuisance. (172 Cal.App.3d at pp. 424-425.) The trial court sustained a demurrer on the ground that Government Code section 835, a provision of the Tort Claims Act that permits recovery under such circumstances, was the plaintiffs' exclusive remedy. However, the Court of Appeal issued a writ of mandate reversing the lower court, holding instead that one may assert a claim for nuisance under Civil Code section 3479 even if the facts would also support an action under the Tort Claims Act. (172 Cal.App.3d at pp. 425, 431-432.)

Unlike *Pfleger,* this case involves the common law rule of immunity. Moreover, it does not appear that *Pfleger* involved a natural condition of the land. In any event, the court's ruling addressed only the impact of the Tort Claims Act on a cause of action for nuisance. It did not suggest what facts would be necessary to prove nuisance liability in that case or this case.

What plaintiffs here seize upon in support of their argument are comments by the *Pfleger* court that an action under the Tort Claims Act is essentially a claim for negligence and that "it is more difficult to defend against a cause of action for nuisance than one for negligence[.]" (172 Cal.App.3d at pp. 425, 432.)

In support of these comments, the court cited *Barnhouse* v. *Superior Court* (1982) 133 Cal.App.3d 171, 196, fn. 17 [183 Cal.Rptr. 881], where the court said that "nuisance does not require proof of negligence[ ]" and *Sturges* v. *Charles L. Harney, Inc., supra,* 165 Cal.App.2d 306, 318, where the court said that the "owner of land may not do even nonnegligent acts on his property with impunity where they create a nuisance as to his neighbor."

---

[9] For a persuasive articulation of these principles, see *Terrell* v. *Alabama Water Service Co.* (1943) 245 Ala. 68 [15 So.2d 727, 729-730].)

We fully agree with all of these statements and find them consistent with our discussion and conclusions. ■■■ As previously explained, a nuisance may arise from various forms of conduct, not just negligent acts. Thus, for example, where a defendant intentionally brings water onto his land for irrigation, and the water escapes and interferes with a neighbor's land, the defendant may be liable for maintaining a nuisance, even though he did not act negligently. (*Fredericks* v. *Fredericks* (1951) 108 Cal.App.2d 242 [238 P.2d 643]; *Shields* v. *Wondries, supra,* 154 Cal.App.2d 249.) This example also illustrates what the courts in *Pfleger, Barnhouse,* and *Sturges* meant by their comments.

■■ Clearly, a claim of nuisance based on our example is easier to prove than one based on negligent conduct, for in the former, a plaintiff need only show that the defendant committed the acts that caused injury, whereas in the latter, a plaintiff must establish a duty to act and prove that the defendant's failure to act reasonably in the face of a known danger breached that duty and caused damages.

According to plaintiffs, the comment about nuisance being easier to prove than negligence means that they need not show any wrongful conduct to recover on a nuisance theory. Rather, the District is liable simply because it owned the watershed. ■■ However, we have already rejected this view because it would, in effect, make owning land an ultrahazardous activity for which strict liability may be imposed. Moreover, it would diminish the importance and purpose of *Sprecher* v. *Adamson Companies, supra,* 30 Cal.3d 358, for who would elect to prove negligence concerning a natural condition, if nuisance liability flows from it as a matter of law.

■■■■■■ Returning now to the propriety of the nonsuit on plaintiffs' nuisance claim, we conclude that the common law rule of absolute immunity does not support the trial court's action, and, therefore, the issue of nuisance should have been submitted to the jury.[10] ■■ However, since the District's liability for creating a nuisance could only have arisen from its alleged negligence, and since the jury found that the District was not negligent, any error in granting nonsuit on this claim was harmless. (*Calder* v. *City etc. of San Francisco, supra,* 50 Cal.App.2d

---

[10] We reject the District's claim that the existence of a nuisance is a question of law for the court, and, therefore, nonsuit was proper because it reflects the trial court's conclusion that the accumulation of debris was not a nuisance. Although the court, rather than the jury, decides whether something is a nuisance *per se,* the jury, in an action for damages and upon proper instruction, is responsible for determining whether something, not deemed a nuisance per se, is a nuisance *in fact,* i.e., in a particular instance. (66 C.J.S., *supra,* § 153, p. 960; see, e.g., *Sturges* v. *Charles L. Harney, Inc., supra,* 165 Cal.App.2d at pp. 317-318.) Clearly, the natural accumulation of natural debris on one's property is not a nuisance wherever and whenever it exists, i.e., a nuisance per se. (See 47 Cal.Jur.3d, *supra,* § 8, pp. 214-215.)

827, 839-840; see *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### B. Trespass

■ In arguing that the trial court erred in granting nonsuit on their claim of trespass, plaintiffs correctly note that trespass involves interference with the right of another to sole possession of his land and may be committed by an act which is intentional, reckless or negligent, or the result of ultrahazardous activity. (5 Witkin, *supra,* § 604, p. 704.)

■ Clearly, if nonsuit was based on the common law rule of immunity, then the court erred in granting it, and the issue of trespass should have been submitted to the jury. However, as with plaintiffs' nuisance theory, liability for trespass in this case can arise only from the District's alleged negligence. Thus, again, given the jury's verdict, any error in granting nonsuit was harmless. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

### C. Inverse Condemnation

In apparent recognition of the fact that " '[i]nverse condemnation occurs when a *public project,* operating as designed and conceived, proximately causes damage to private property' " (*Imperial Cattle Co.* v. *Imperial Irrigation Dist.* (1985) 167 Cal.App.3d 263, 269 [213 Cal.Rptr. 622], italics added), plaintiffs based this theory of recovery on the District's alleged maintenance and control of a drainage culvert that became blocked with debris, causing runoff to enter and damage plaintiffs' property. Plaintiffs now argue that given the evidence they produced at trial, the trial court erred in keeping this claim from the jury.

Actions for eminent domain or inverse condemnation are authorized by article I, section 19 of the California Constitution, which provides, in relevant part, "Private property may be taken or damaged for public use only when just compensation, *ascertained by a jury* unless waived, has first been paid to, or into court for, the owner." (Italics added.)

■ An action for inverse condemnation is a two-step proceeding. (See Condemnation Practice in California, (Cont. Ed. Bar 1973) § 13.12A, pp. 211-212.) First *the court* determines whether the plaintiff is entitled to compensation, resolving all necessary questions of law and fact. Thereafter, the jury determines the amount of compensation to be awarded. (*Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 664 [39 Cal.Rptr. 903, 394 P.2d 719]; *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 402 [144 P.2d 799]; *Wagner* v. *State of California* ex. rel. *Dept. Pub. Wks.* (1975) 51 Cal.App.3d 472, 479

[124 Cal.Rptr. 224]; *Aaron* v. *City of Los Angeles* (1974) 40 Cal.App.3d 471, 484 [115 Cal.Rptr. 162]; *Breidert* v. *Southern Pac. Co.* (1969) 272 Cal.App.2d 398, 409 [77 Cal.Rptr. 262]; *Riverside County Flood etc. Dist.* v. *Halman* (1968) 262 Cal.App.2d 510, 515-516 [69 Cal.Rptr. 1].) Thus, unless the plaintiff proves and the court initially finds liability for a taking, there is no need for a jury trial on the amount of compensation. (See, e.g., *Niles Sand & Gravel Co.* v. *Alameda County Water Dist.* (1974) 37 Cal.App.3d 924 [112 Cal. Rptr. 846].)

Here, plaintiffs had the burden on all issues concerning its claim of inverse condemnation. After both sides had presented their evidence, the trial court purported to grant a nonsuit, concluding, in effect, that plaintiffs had failed to establish a public taking. More specifically, the record indicates, and the parties assert, that plaintiffs failed to prove that the District owned, controlled, and maintained the culvert.

 However, since plaintiffs were not entitled to a jury trial on this issue, the trial court did not so much grant a nonsuit as directly rule in favor of the District on this cause of action. Consequently, there is no merit to plaintiffs' claim that because there was sufficient evidence to support a finding that the District controlled the culvert, the issue should have been presented to the jury. Clearly plaintiffs had the burden to prove the District's ownership of the culvert, and regardless of whether plaintiffs' evidence could prove ownership, the trial court ruled that it did not. Moreover, we do not believe that plaintiffs' evidence—the testimony of Ed Hayes—conclusively established the District's ownership as a matter of law. Hence, the ruling of the trial court was proper.

## II. Testimony

 Plaintiffs contend that the trial court erred in overruling their objection to the introduction of evidence that one year after plaintiffs' property was damaged, Charles Hayes, the father of Ed Hayes, was cited by the Department of Fish and Game for attempting to divert the location of Sweetwater Creek. We agree.

The court allowed use of this evidence solely to impeach the testimony of Ed Hayes. He testified as follows: "Q: During the ten years preceding the January 4, 1982 storm, did you or your dad do any dozier [*sic*] work up on your property? [¶] A: No. . . . . [¶] Q: Have either you or your father ever done anything to try to divert the location to physically move the location of Sweetwater Creek? [¶] A. Not to my knowledge."

Clearly, evidence that Ed Hayes's father was cited for diverting the creek with a shovel does not contradict Ed Hayes's testimony. Thus, it was not

proper impeachment evidence, and should have been excluded as irrelevant. (Evid. Code, § 350.)

At oral argument, the District argued that the evidence was relevant to rebut plaintiffs' claim that the District owned and maintained the culvert.

However, even if evidence that Ed Hayes's father was seen working on Sweetwater Creek may indirectly tend to make the District's point, the fact that he was cited by the Fish and Game Department remains totally irrelevant.

In sum, we believe that this evidence should have been excluded. However, reversal is not necessary.

Since the evidence did not impeach Ed Hayes, his credibility did not suffer. Moreover, any shadow cast by the citation fell on Ed Hayes's father, not him. Finally, the events surrounding the issuance of the citation occurred so long after the January 1982 storm as to render the evidence virtually meaningless. Thus, we conclude that its admission was harmless. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

### III. *Submission to the Jury*

Plaintiffs contend that the trial court committed reversible error in submitting the matter to the jury for their consideration sometime after 3 p.m. on the last day of trial. They claim that since the trial lasted for six days and contained many complex issues concerning the rights of adjacent property owners and since the jury returned a verdict in forty-four minutes, "there is no way that all the issued [*sic*] submitted to the jury along with the exhibits and other evidence, could have been properly considered[.]" Consequently they argue that in sending the jury out to begin deliberations late in the day, the trial court deprived them of a fair trial, "in that the jurors did not deliberate in accordance with the instructions given by the court." This contention is frivolous.

The length of deliberations neither demonstrates nor even suggests that the jury did not properly perform its duty.

*Disposition*

The judgment is affirmed.

Agliano, P. J., and Brauer, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 23, 1989.