[Civ. No. 22886. First Dist., Div. Two. Aug. 16, 1966.]

THE REDEVELOPMENT AGENCY OF THE CITY OF RICHMOND, Plaintiff and Respondent, v. JOHN MAYNARD, as Administrator, etc., Defendant and Appellant.

Dixon & White, John F. Cruickshank, Jr., and Sandra H. Cox for Defendant and Appellant.

Carlson, Collins, Gordon & Bold and Frederick Bold, Jr., for Plaintiff and Respondent.

SHOEMAKER, P. J.—On August 1, 1963, plaintiff The Redevelopment Agency of the City of Richmond filed a complaint in eminent domain against defendant John Maynard, as administrator of the estates of Alvin and Mary Maynard. The property sought was owned by the above-mentioned estates and situated within the boundaries of an area selected for redevelopment.

Defendant's answer, which was filed on September 25, 1963, alleged that the property in question was valued at $9,500 and sought judgment in that amount.

The pretrial order, dated December 26, 1963, indicates that

no appearance was made by defendant's counsel. Said order provides that the sole issue in dispute is the fair market value of the property as of August 1, 1963.

Trial was had on May 25, 1964. Plaintiff's expert witness testified that the fair market value of the property in question was $3,700 on August 1, 1963, the date on which summons was issued in the instant action.

Defendant was allowed, over plaintiff's repeated objections, to produce evidence that the property in the area had substantially deteriorated in value subsequent to the institution of the redevelopment project in 1960; that plaintiff's establishing of the boundaries of the redevelopment area forced the property owners to move from the area and thereby rendered their property susceptible to vandalism. Defendant was further allowed, despite plaintiff's objections, to show that in 1960 plaintiff's representative had offered to purchase the property for $8,200 and that as recently as September 27, 1963 (two days after defendant had filed his answer), plaintiff's counsel had written defendant's counsel, enclosing a stipulation to be signed by him and assuring him that ''judgment will be for $8,200.''

Plaintiff's counsel testified, in explanation of his letter of September 27, that plaintiff's negotiator had originally offered to purchase the property for $8,200 and that in November 1960, escrow instructions and a deed had been prepared. When it was subsequently learned that title to the property was vested in a deceased person and that the purchase could not be consummated until certain probate proceedings had been completed, it was agreed by the parties that plaintiff would commence an action in eminent domain and condemn the property at the price previously offered. After plaintiff's counsel had commenced the instant action and had written the letter of September 27, he was advised that plaintiff had conducted a new appraisal of the property and had found that it had grossly deteriorated in value. He was also advised that the risk of such deterioration was to be borne by the property owner and that plaintiff could not legally abide by the prior offer to pay $8,200. Plaintiff's counsel immediately contacted defendant's counsel and informed him that he could no longer stipulate to the entry of an $8,200 judgment.

Throughout the course of the trial, counsel for the respective parties engaged in vigorous argument as to the admissibility of all of the above-mentioned evidence except that which directly pertained to the fair market value of the property on August 1, 1963. Defendant's counsel took the position that

since plaintiff had originally offered to pay $8,200 for the property, which sum was agreeable to his client, it was estopped from attempting to acquire it at a lower amount, particularly since any decrease in value was, in his opinion, the direct result of plaintiff's act of creating the redevelopment area. Plaintiff's counsel, on the other hand, asserted that since the pretrial order stated that the sole issue was the value of the property on August 1, 1963, defendant was precluded from raising any additional issues at trial. Defendant's counsel then stated that he had not attended the pretrial conference and had requested a settlement conference under the belief that the case was not to be tried but would be settled in accordance with the 1960 agreement. He stated that he was also under the belief that the making of a request for a settlement conference would have the effect of removing the case from the pretrial calendar and transferring it to the settlement calendar. He then moved to amend the pretrial order, but plaintiff's counsel opposed the motion as untimely. The court deferred its ruling and allowed defendant, over plaintiff's continuing objections, to produce the above-mentioned evidence in support of his theory of estoppel. At the conclusion of the trial, however, the court ruled that such evidence could not be considered by it, since it pertained to an issue which had not been raised by the pleadings or at the pretrial conference.

The trial court made no findings with regard to the evidence produced in support of defendant's estoppel theory but did find that the fair market value of the property on August 1, 1963, was $3,700, and that plaintiff was entitled to condemn the property for that amount, less certain unpaid taxes, penalties and costs. A judgment in condemnation was accordingly entered, and defendant filed notice of appeal therefrom.

Defendant's sole contention is that the trial court erred in refusing to consider the evidence produced in support of his estoppel theory and in failing to find that plaintiff was estopped as a matter of law from seeking to condemn the property for less than the price of $8,200.

There is some merit to defendant's contention that the court ought not to have held that his failure to plead estoppel or to raise said defense at the pretrial conference precluded him from raising it at the trial. ██ Although estoppel is an affirmative defense which must normally be specially pleaded by the defendant, this rule is inapplicable where the defendant prepares his answer without knowledge of the fact that his

claim must ultimately rest upon the defense of estoppel. (2 Witkin, California Procedure (1954) Pleading, §§ 548-549, pp. 1546-1548; *Kenny* v. *Christianson* (1927) 200 Cal. 419, 424-425 [253 P. 715, 50 A.L.R. 1297]; *Estate of Pieper* (1964) 224 Cal.App.2d 670, 691 [37 Cal.Rptr. 46].)

In the instant case, the record fails to indicate the precise date upon which plaintiff's counsel apprised defendant's counsel of the fact that plaintiff was no longer willing to stipulate to a judgment in the amount of $8,200. However, the testimony of plaintiff's counsel and the letter of September 27 show that defendant's answer was prepared in ignorance of this fact. The statements of defendant's counsel also indicate that he was unaware of this fact until just prior to the commencement of the trial. Assuming this to be the case, defendant should have been permitted to plead this defense at the trial.

The question, however, remains as to whether the evidence offered by defendant would have been sufficient, had the trial court ruled in favor of its admissibility, to justify the application of the doctrine of estoppel against plaintiff. We answer this question in the negative.

*American Nat. Bank* v. *A. G. Sommerville, Inc.* (1923) 191 Cal. 364, 372-373 [216 P. 376]; and *Nevcal Enterprises, Inc.* v. *Cal-Neva Lodge, Inc.* (1963) 217 Cal.App.2d 799, 807 [32 Cal.Rptr. 106], upon which defendant relies, are merely authority for the rule that the doctrine of equitable estoppel may be invoked where a "party has, by his declarations or conduct, misled another to his prejudice, so that it would be a fraud upon the latter to allow the true state of facts to be proved."

It is settled that said doctrine is applicable only where (1) the party to be estopped was apprised of the true facts as to which the estoppel is claimed and misrepresented or concealed those facts; (2) the party to be estopped intended that the other party act upon his conduct; (3) the party claiming the estoppel was ignorant of the true facts; and (4) the party claiming the estoppel relied to his injury upon the conduct of the party to be estopped. (*Lusitanian-American Development Co.* v. *Seaboard Dairy Credit Corp.* (1934) 1 Cal.2d 121, 128 [34 P.2d 139]; *Banco Mercantil* v. *Sauls Inc.* (1956) 140 Cal.App.2d 316, 323 [295 P.2d 55].)

Here, plaintiff did represent to defendant that it was willing to purchase the property in question for $8,200 and that it would stipulate to the entry of judgment in that amount. However, the record is totally lacking in evidence

that said representation was made in bad faith or that at the time of its making plaintiff intended to condemn the property for a lesser amount or was even aware that it had deteriorated in value subsequent to 1960. The record demonstrates, to the contrary, that plaintiff made the representation in good faith, fully believing the property to be worth $8,200; that it subsequently learned that the property had substantially decreased in value; and that it immediately apprised defendant of this fact and of its unwillingness to pay more for the property than was warranted by its present value. This evidence falls far short of establishing the misrepresentation or concealment required under the doctrine of equitable estoppel.

Moreover, there is a similar lack of evidence that defendant relied *to his detriment* upon plaintiff's representation that it would purchase the property for $8,200.

Defendant's own expert witness, Ruby Bims, testified that in 1960, when plaintiff originally agreed to purchase the property for $8,200, it contained a habitable dwelling and in her opinion was worth from $8,500 to $9,000. She saw the property again shortly before the trial and found that the dwelling had been vandalized and was unoccupied. Jack Stoddard, another expert witness called by defendant, was of the opinion that the property was worth only $3,580 on August 1, 1963. Plaintiff's expert witness testified that the decrease in the value of the property between 1959 and 1963 was due to vandalism and not to any change in the general price levels in the community.

The evidence also shows that plaintiff was ready and willing to purchase the property in November 1960, and was unable to do so only because defendant could not furnish title until certain probate proceedings had been completed. The instant action was commenced in order to complete the purchase in the most expeditious manner and to avoid delay.

There is no evidence that plaintiff obtained either title to or possession of the property prior to the entry of the final order of condemnation in the instant action. ██ Civil Code, section 1662, provides that a vendor who has contracted to sell real property bears the risk of destruction of a material part of the subject matter of the contract if neither legal title nor possession has been transferred to the vendee. The same rule applies in a condemnation proceeding, and the condemnee must bear the risk of destruction of a material part of the property, whether by fire or by vandalism, until the condemner takes either title to or possession of the property. (*Re-*

*development Agency* v. *Maxwell* (1961) 193 Cal.App.2d 414, 419 [14 Cal.Rptr. 170, 89 A.L.R.2d 1070].)

 In the light of the foregoing, it is apparent that defendant suffered no detriment whatever by relying upon plaintiff's offer to purchase the property for $8,200 and that he has recovered, under the judgment in condemnation, everything which he would have been entitled to receive under the contract of purchase.

The evidence offered in support of defendant's estoppel defense could not have resulted in his recovering a greater amount for the property than that allowed by the judgment entered herein. Such being the case, the trial court's ruling as to the admissibility of such evidence was correct and was not prejudicial to the rights of defendant.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.