[Civ. No. 46054. First Dist., Div. One. July 15, 1980.]

COUNTY OF MONTEREY, Plaintiff and Respondent, v.
W. W. LEASING UNLIMITED, Defendant and Appellant.

638

COUNSEL

Saul M. Weingarten for Defendant and Appellant.

Iver E. Skjeie, County Counsel, and Jose Rafael Ramos, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**GRODIN, J.**—In a proceeding in eminent domain brought by the County of Monterey the jury awarded W. W. Leasing, Unlimited, owner of the condemned property at the time the proceeding was instituted, the sum of $7,318.50. W. W. Leasing appeals from the judgment on various grounds. We find them to be without merit, and consequently affirm.

1. Alleged error in failing to instruct that appellant had suffered severance damages through impairment of access.

Appellant was the owner of real property located in the County of Monterey near the intersection of Highway 68 and Olmstead Road. The property consisted of two parcels: one a parcel of 20,000 square feet which was zoned commercial, and the other a parcel which was zoned for "transient residential" use. The former parcel had frontage on Highway 68, which was marked so as to allow access by vehicles traveling both east and west on the highway. In 1974 the county began negotiations for the condemnation of a strip of appellant's land contiguous to Highway 68 and consisting of 0.112 acres of 4,879 square feet, for the purpose of providing a "deceleration lane" on Highway 68 and to accommodate the construction of Olmstead Road, which at that time existed only on the north side of the highway. The portion to be condemned did not include the designated access off the highway. Negotiations were unsuccessful, and in April 1976 the county instituted this proceeding. Upon the deposit of $5,000 as security, the county obtained an order for immediate possession.

In January 1977 appellant contracted for the sale of both parcels to one Leo Copper for $90,000, reserving the right to proceeds from the condemnation proceeding. In March 1977 Copper applied to reclassify the residentially zoned parcel to a commercial designation, C-1-D. That application was not granted, but instead, in August 1977, the board of supervisors accepted a recommendation of the county zoning administrator that the entire property be zoned H-1, allowing for commercial use only with a use permit. In September 1977 the sale from appellant to Copper was consummated, and shortly thereafter Copper applied for a use permit to allow for construction and maintenance of a restaurant on the property. The zoning administrator granted the permit on the condition that access to the restaurant be from Olmstead Road, and not from Highway 68. The zoning administrator testified in the trial of this matter that the condition was imposed because in his opinion restaurant access from the highway would be dangerous, and that the condition was in no way related to the pending condemnation proceeding. Copper testified that he was aware of access problems when he entered into the contract for sale, that access from the highway would have been inadequate even if it had been permitted, and that he preferred access from Olmstead Road, which he was seeking to obtain. The only valuation witness who testified concerning access at the trial was the county's witness, who expressed the opinion that access to appellant's property was not adversely affected by the taking, and that in fact it may have been improved as a result of the county's work on Olmstead Road.

Appellant contends that the trial court erred in failing to instruct the jury that appellant's right of access was impaired by reason of the condemnation. It is well established, of course, that a substantial and unreasonable impairment of access in connection with a taking entitles the owner to severance damages for the depreciation in value of the remainder. (E.g., *Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663 [39 Cal.Rptr. 903, 394 P.2d 719]; *People* v. *Ricciardi* (1943) 23 Cal.2d 390 [144 P.2d 799]; *People* ex rel. *Dept. Pub. Wks.* v. *Silveira* (1965) 236 Cal.App.2d 604 [46 Cal.Rptr. 260].) Appellant is also correct in contending that the determination of whether such substantial impairment has been established is a matter of law for the trial court to determine, leaving the determination of the extent of the impairment to the jury. (*Breidert* v. *Southern Pac. Co., supra*, at p. 664; see also *Wagner* v. *State of California* ex rel. *Dept. Pub. Wks.* (1975) 51 Cal.App.3d 472, 479 [124 Cal.Rptr. 224]; *Riverside County Flood etc. Dist.* v. *Halman* (1968) 262 Cal.App.2d 510, 516 [69 Cal.Rptr. 1]; *People* ex rel. *Dept. of Public Works* v. *Wasserman* (1966) 240 Cal. App.2d 716, 728 [50 Cal.Rptr. 95]; *People* ex rel. *Dept. of Pub. Wks.* v. *Presley* (1966) 239 Cal.App.2d 309, 313 [48 Cal.Rptr. 672].)

And the record does reflect not only that the trial court declined to instruct the jury that there had been impaired access but that it did so, arguably, on the erroneous premise that it was for the jury to determine whether there was impairment. But assuming that the trial court's failure to give the requested instruction stemmed from that erroneous premise, a question still remains whether as a matter of law such an instruction was called for under the circumstances. Impaired access severance damages, by definition, are those which arise from the taking. (Code Civ. Proc., § 1263.420.) Further, the right to severance damages is to be determined with reference to the time the condemnation is commenced. (*People* ex rel. *Dept. Pub. Wks.* v. *Simon Newman Co.* (1974) 37 Cal.App.3d 398, 404 [112 Cal.Rptr. 298].) There is simply no evidence in the record to indicate that there was any substantial impairment of access arising out of the taking.[1]

---

[1]It does not appear from the record whether access to that portion of the remaining property contiguous with the taken portion was *physically* impaired, but even if it were, that would be irrelevant if such access could not *legally* have been used in conjunction with what would otherwise be the highest and best use of the parcels. According to the county's valuation witness, the latter is the case. He testified "Any access that the property had and has had for its highest and best use is no different today than what it was at that time; in fact, it could be a better access situation today, because prior and in the before condition, Jacks Peak [Olmstead] Road did not exist. . . . The access, if it

Rather, to the extent that prior access was impaired, all the evidence indicates the impairment was a product of the rezoning actions which occurred subsequent to the commencement of the action. Where the judgment is "'the only proper one in the state of the record,'" even substantial error is not reversible. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 315, p. 4293.) That is the situation here. Failure to give the requested instruction was not prejudicial error.

2.   Alleged error in excluding evidence of recent valuation data.

In valuing the property taken, both appellant's and respondent's expert witnesses made reference to the sales of comparable properties ("comparables"). Under the terms of Code of Civil Procedure sections 1258.210 through 1258.300, the parties were required to exchange data pertaining to such comparables 40 days prior to commencement of the trial. The penalty for failure to comply with this requirement is exclusion of evidence of the comparables at least from the offering party's case-in-chief. (Code Civ. Proc., § 1258.280.) Here, the comparable sales originally used by appellant's first witness, Mrs. Arnold, were properly exchanged. Mrs. Arnold had, however, made her appraisal in December of 1977. Apparently, trial had at that time been set for January of 1978. After the January trial date was continued, apparently at respondent's request, Mrs. Arnold did further research and discovered several new comparables. These new comparables were not exchanged with respondent pursuant to the statutory procedure. Respondent first learned of them when appellant elicited the testimony of Mrs. Arnold at the original trial which commenced on June 19, 1978, and ended in a mistrial on June 21. It was the introduction of evidence concerning those comparables which provoked the court in the original trial to grant a mistrial.

A similar situation arose with respect to comparables relied upon by appellant's second valuation expert, one Samuelson. This expert had made his appraisal after the continuance of the January trial date. Appellant submitted the appraisal report to respondent but neglected to attach a list of the comparables upon which the expert had relied.

---

were not permitted to the property from Highway 68 in the before condition, that is no different than it would be today."

There was no rebuttal to this testimony. Appellant called two valuation experts, but neither testified to diminution of access, or related any portion of their valuation to diminution of access. Rather, both of them testified generally to a reduction of value to the remaining parcels because of a change in size and shape of the property.

When the second trial began on June 26, 1978, appellant attempted to introduce testimony from Mrs. Arnold concerning the unexchanged comparables. At first laboring under the misapprehension that the comparables were not new but had merely been updated, the court allowed Mrs. Arnold's testimony to begin. When the court realized that the new comparables were just that, it sustained respondent's objection to them. In chambers, counsel for appellant argued that the court should admit the comparables—those used by Arnold and those used by Samuelson —in an exercise of its discretion under Code of Civil Procedure section 1258.290.[2] The court rejected the argument.

Subsequently, appellant's counsel attempted to persuade the court that the comparables were admissible on cross-examination of respondent's valuation witness and in rebuttal. Although the court allowed limited cross-examination of respondent's witness as to whether he had considered the subject comparables in making his valuation, the court refused to allow testimony concerning the comparables in rebuttal. In sustaining respondent's objection to use of the Samuelson comparables on rebuttal, the court stated that it did so "not only upon the ground of the Code of Civil Procedure but under the inherent power of the court in respect of discovery procedure."

■ Appellant here contends the trial court erred in ruling that the comparables were not admissible in rebuttal. This contention is without merit.

Appellant is correct in the argument that the exclusionary provision of Code of Civil Procedure section 1258.280 applies only to the presen-

---

[2]Section 1258.290 provides: "(a) The court may, upon such terms as may be just (including but not limited to continuing the trial for a reasonable period of time and awarding costs and litigation expenses), permit a party to call a witness, or permit a witness called by a party to testify to an opinion or data on direct examination, during the party's case in chief where such witness, opinion, or data is required to be, but is not, included in such party's list of expert witnesses or statements of valuation data if the court finds that such party has made a good faith effort to comply with Sections 1258.210 to 1258.260, inclusive, that he has complied with Section 1258.270, and that by the date of exchange he:

"(1) Would not in the exercise of reasonable diligence have determined to call such witness or discovered or listed such opinion or data; or

"(2) Failed to determine to call such witness or to discover or list such opinion or data through mistake, inadvertence, surprise, or excusable neglect.

"(b) In making a determination under this section, the court shall take into account the extent to which the opposing party has relied upon the list of expert witnesses and statements of valuation data and will be prejudiced if the witness is called or the testimony concerning such opinion or data is given."

tation of unexchanged data during the offering party's case-in-chief. This seems clear from the relevant terms of the section[3] and is further supported by the Law Revision Commission comments to the section which read in pertinent part: "Section 1258.280 is the same in substance as former Section 1272.05. Section 1258.280 provides a sanction calculated to insure that the parties make a good faith exchange of lists of expert witnesses and essential valuation data....[¶] Section 1258.280 limits only the calling of a witness, or the presentation of testimony, during the case in chief of the party calling the witness or presenting the testimony. The section does not preclude a party from calling a witness in rebuttal or having a witness give rebuttal testimony that is otherwise proper. See City & County of San Francisco v. Tillman Estate Co., 205 Cal. 651,...; State v. Loop, 127 Cal.App.2d 786,.... The section also does not preclude a party from bringing out additional data on redirect examination where it is necessary to meet matters brought out on the cross-examination of his witness. However, the court should take care to confine a party's rebuttal case and his redirect examination of his witnesses to their purpose of meeting matters brought out during the adverse party's case or cross-examination of his witnesses. A party should not be permitted to defeat the purpose of this article by reserving witnesses and valuation data for use in rebuttal where such witnesses should have been called and such valuation data presented on the direct examination during the case in chief." (See also Condemnation Practice in Cal. (Cont.Ed.Bar 1973) § 9.7, p. 203.)

It is clear from those comments, however, that the concept of "rebuttal" is not to be used in derogation of the requirement that data be exchanged pursuant to the prescribed procedures. It is well established that rebuttal evidence does not properly consist of additional opinion evidence concerning valuation. Rather, it must be concerned with and address new matter brought out by the opposing party. (Cf. *People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 357 [19 Cal.Rptr. 473, 369 P.2d 1], with *People* v. *Loop* (1954) 127 Cal.App.2d

---

[3]The relevant terms are contained in section 1258.280, subdivision (c): "Except as provided in Section 1258.290, upon objection of a party who has served his list of expert witnesses and statements of valuation data in compliance with Section 1258.230:...

"(c) No witness called by a party required to serve statements of valuation data on the objecting party may testify on direct examination during the case in chief of the party who called him to any opinion or data required to be listed in the statement of valuation data for such witness unless such opinion or data is listed in the statement served except that testimony that is merely an explanation or elaboration of data so listed is not inadmissible under this subdivision."

786, 801-802 [274 P.2d 885]. See also Condemnation Practice in Cal., *supra*, § 9.61, p. 247.) The comparables sought to be introduced by appellant were, under this rule, improper rebuttal evidence in that they were simply additional evidence on the question of value.

In arguing that the comparables were proper subjects for rebuttal appellant concentrates primarily on the facts that the trial herein had been delayed and that the valuation by respondent's expert was two years old. Appellant states the comparables were relevant on rebuttal "to show 1) the existence of sales activity [subsequent to the appraisal made by respondent's expert], 2) the lack of investigation and lack of thoroughness on the part of [that expert], and 3) the indication of value as derived from the elements of comparability." As to the last of these asserted bases of relevance on rebuttal—the indication of value—this was precisely the issue which appellant was required to and did address in its case-in-chief. As to the other asserted bases of relevance, appellant successfully brought out evidence concerning these subjects despite the court's ruling that the comparables were not admissible. In testifying on redirect, respondent's valuation expert testified that he had "not made an investigation of the movement of prices" because from his experience he felt that such movement did not exist. In response, appellant introduced testimony from Arnold and Samuelson that in the relevant time span commercial property of the sort in question had indeed increased in value. Further, in cross-examining respondent's expert, appellant elicited testimony that the expert had not relied on the subject comparables in making his appraisal and thus brought to the jury's attention the expert's alleged "lack of investigation and lack of thoroughness."

We conclude that appellant was allowed fair scope for rebuttal and that the court properly excluded from such rebuttal the unexchanged data on comparables.

3. Alleged lack of evidence to support the jury's valuation.

■ Appellant contends the jury's valuation of the property is not supported by the evidence in that it was based on a valuation made by respondent's expert which was dated by two years.

The valuation evidence was basically as follows. Respondent's expert, Mr. Brodd, valued the property at $1.50 per square foot as of the date of trial for a total of $7,318.50 for the 4,879 square feet taken. His

opinion on value was based in part on comparable sales which had occurred some years prior to trial. On cross-examination Brodd acknowledged "a general increase in the value of commercial property on the Monterey Peninsula during the past five years." On redirect, however, he explained that while other types of property had increased in value over the years "the increases that I see in commercial properties are almost non-existent, for the reason that with the cost of building shopping centers, restaurants, and whatever, today, with the already great number of them that we have, there is not that great demand for commercial type properties."

Both of appellant's experts disagreed with Brodd's opinion that commercial properties in the subject area had not increased in value in recent years. They also disagreed with Brodd's valuation. Arnold assigned a value of $6.50 per square foot; Samuelson valued the property at $3 per square foot.

It is evident from the jury's verdict awarding appellant $7,318.50 that it accepted the opinion of respondent's witness who testified that his valuation was current. The determination of value was a question for the jury. (Cal. Const., art. I, § 19.) It rested with the jury to determine the credibility of the expert witnesses and to resolve conflicts in their opinions. (See *City of Carlsbad* v. *Wight* (1963) 221 Cal.App.2d 756, 763 [34 Cal.Rptr. 820]; *People* v. *Loop, supra,* 127 Cal.App.2d at p. 800.) We conclude the jury's award is supported by the evidence.

4. Alleged error in finding no compensable loss of use.

■ Appellant argued to the trial court that it was entitled to damages for "loss of use of possession" during the 27 months between the time this action was commenced and the date of trial. The parties stipulated that the question of entitlement was one for the court as a matter of law, and they agreed upon a formula for determining loss if entitlement was found. The trial court found no compensable loss of use, and appellant contends that was error. It argues that appellant "had the burdens, but not the benefit" of the property during the 27-month period, and was therefore entitled to compensation for the value of the use.

The only authority cited by appellant in support of this contention is *Sacramento & San Joaquin Drainage Dist.* v. *Goehring* (1970) 13 Cal. App.3d 58 [91 Cal.Rptr. 375], which applied the principle that a property owner is entitled to compensation for a *temporary* taking (in that

case, a temporary easement for road purposes), as distinguished from a permanent taking through condemnation. That principle has no application here. This is not a case involving "inequitable precondemnation activities," as where the public authority unreasonably delays eminent domain action following an announcement of intent to condemn or otherwise engages in unreasonable conduct prior to condemnation (cf. *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345].) Respondent was entitled to take immediate possession (Cal. Const., art. I, § 19; Code Civ. Proc., §§ 1255.410-1255.480), and from that date respondent bore the obligation to pay interest on the condemnation judgment (Code Civ. Proc., § 1268.310), to pay taxes on the property (Rev. & Tax. Code, § 5082), and to bear the risk of loss (see *Redevelopment Agency* v. *Maynard* (1966) 244 Cal.App.2d 260, 265 [53 Cal.Rptr. 42]; Civ. Code, § 1662). No additional compensation is required.

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied August 14, 1980, and appellant's petition for a hearing by the Supreme Court was denied September 10, 1980.