Filed 4/10/15  Rulon v. City of Colton CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KENNETH RULON, | |
| Plaintiff and Appellant, | G050697 |
| v. | (Super. Ct. No. CIVSS708536) |
| CITY OF COLTON, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Bryan Foster, Judge.  Affirmed.

Hadsell Stormer Richardson & Renick, Dan Stormer and Joshua Piovia-Scott for Plaintiff and Appellant.

Best Best & Krieger, Kira L. Klatchko and Irene S. Zurko for Defendant and Respondent.

# INTRODUCTION

As Oscar Wilde learned to his cost, one needs to think long and hard before suing for defamation. Once the door of reputation is opened, one can never be sure what will walk through it.

Appellant Kenneth Rulon sued respondent City of Colton after he was fired as its police chief. He maintained he was fired in retaliation for blowing the whistle on a member of the Colton City Council. He also alleged the city manager, Daryl Parrish, defamed him after he filed his notice of claim, publically referring to him as a "psychotic megalomaniac."

The 20-day jury trial became in large part a mud-slinging contest, both sides participating with equal fervor. The defamation claim succumbed to a motion for nonsuit before the case went to the jury, but not before a great deal of time had been spent on it. In the end, the jury found the City of Colton had not retaliated against Rulon.

Rulon now asserts that some of the mud slung at him was inadmissible evidence. He also asserts that the trial court abused its discretion by not allowing him enough scope to rebut some of the defense's evidence.

We affirm the judgment. The trial court has wide discretion to admit or exclude evidence, and we find no abuse of discretion here. Rulon put conduct indicative of "psychotic megalomania," whatever that may mean, and his reputation as a whole at issue when he sued for defamation. He has not shown how the court abused its discretion in limiting rebuttal, when witnesses were either going to repeat what had already been said during Rulon's case-in-chief or were going to give testimony that they should have given as part of his case.

# FACTS

Rulon began working as Colton's police chief in May 2003. He started strong out of the gate, earning a glowing review from Parrish in May 2004. But Rulon

was put on administrative leave in March 2007 and fired several weeks later, in early April. The cause of his precipitous fall from grace was the centerpiece of the trial.

Rulon maintained he was fired in retaliation for refusing to cover up the misdeeds of a member of the Colton City Council, despite Parrish's efforts to keep the misdeeds under wraps. Rulon reported the councilman to the district attorney and set a public investigation in motion, thereby incurring Parrish's wrath and, ultimately, termination.

Parrish, for his part, asserted he fired Rulon because the police department was in disarray, with officers demoralized or simply leaving because of the way Rulon ran the department. He cited the loss of confidence in Rulon by command staff (Rulon's immediate subordinates), his inability to rely on Rulon's loyalty to him, a no-confidence vote by the police officers' union, and Rulon's undermining of Parrish's authority as the reasons for termination. In addition, he said that at the end of 2006 and the beginning of 2007 various people both inside and outside the police department had come to him with complaints about Rulon. Well-founded or not, these complaints were considered by him.

On March 13, 2007, after Rulon had been placed on leave but before he was fired, the Colton Police Officers Association – the police officers' union – held a meeting regarding his performance as chief. Members spoke in favor of and against Rulon. Four lieutenants, next in rank after Rulon, also weighed in, as did Rulon's administrative assistant. Ultimately the union voted overwhelmingly to register a vote of no confidence in Rulon as police chief.

Rulon filed a notice of claim against Parrish and the City of Colton under Government Code sections 910 and 911.2 in August 2007. Parrish responded with an ill-considered outburst to the newspapers, in which he referred to Rulon as a "psychotic

3

megalomaniac." Rulon in his turn included causes of action for defamation and for intentional infliction of emotional distress in his amended complaint.[1]

The case was tried over 20 days in March and April 2012. The teed-up causes of action were retaliation, defamation, and emotional distress. The trial court granted a defense motion for a nonsuit on the defamation and emotional distress causes of action. Thus, the case went to the jury only on the retaliation claim and only against the City of Colton. The jury was instructed as to the elements of a retaliation claim[2] and told, "In determining the reasons of termination, you should consider the state of mind of Daryl Parrish as the person who actually made the decision to terminate Kenneth Rulon. You should examine all of the evidence that affected Daryl Parrish's decision in determining whether or not the termination was wrongfully motivated."

By special verdict, the jury found that Rulon was an employee of the City of Colton, that Rulon blew the whistle on a violation of the law, and that the City did not retaliate against him for so doing. The jury did not reach the portion of the special verdict that required a finding on whether Rulon's termination occurred for legitimate reasons independent of his disclosure of information to a law enforcement agency.

## DISCUSSION

The issues Rulon has identified on appeal all involve the evidence admitted or excluded at trial. He asserts the trial court improperly admitted hearsay and character evidence that was both prejudicial – because of its inflammatory content – and irrelevant

---

[1] Although Rulon sued Parrish for other allegedly defamatory statements, by the time of trial "psychotic megalomaniac" was the sole basis for the defamation claim.

Rulon's original complaint is not part of the record.

[2] The jury instruction was based on Labor Code section 1102.5, subdivision (b), which provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

4

because Parrish was unaware of it when he fired Rulon. Rulon also maintains he was not allowed to present sufficient rebuttal evidence.

Review of cases in which the issues involve admission of evidence follows well-defined rules. We review the trial court's decisions to admit or exclude evidence for abuse of discretion. (*Scott v. C.R. Bard, Inc.* (2014) 231 Cal.App.4th 763, 780.) The same standard applies to the court's decisions regarding the scope of rebuttal evidence. (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22.) If the appellant disputes the sufficiency of the evidence, we view all factual matters most favorably to the prevailing party, disregarding any contrary evidence. (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60.) We resolve conflicts in the evidence in support of the judgment. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.) Any error in an evidentiary ruling must also be prejudicial; it must appear that the trial's outcome would have been more favorable to the appellant. (*McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 674-675.)

## I.       Inflammatory Evidence of Which Parrish Was Unaware

Rulon has identified the following evidence as improperly admitted and prejudicial "character" evidence:

Testimony from a Colton police officer that Rulon admitted having an affair with a partner's wife while Rulon was a police officer in a different city;

Testimony from police personnel that Rulon had made a crude sexual remark about a young woman he had seen in her car while stopped at a traffic light and that he had suggested to some officers that they have sexual relations with an unattractive woman police dispatcher to "keep her happy";

Testimony from several Colton officers that Rulon had used abusive language to and about his wife in the presence of other officers and their wives;

5

Testimony from three witnesses that Rulon used extremely vulgar language to refer to women;

Testimony that Rulon threatened various individuals with physical violence and challenged people to fights.

Rulon takes issue with this evidence on several grounds. First, he asserts it was improperly admitted "character evidence," citing Evidence Code section 1101.[3] This testimony is not character evidence in the Evidence Code sense. Inadmissible character evidence in this context is evidence that something in a party's past, especially some past conduct, bears on or resembles an issue in the present action, thereby "proving" whatever he is supposed to have done. "'[E]vidence of other [acts] is inadmissible when it is offered solely to prove . . . disposition or propensity on the part of the accused to commit the [act] charged, because the probative value of such evidence is outweighed by its prejudicial effect. [Citations.] The purpose of the rule is to avoid placing the accused in a position of having to defend against [acts] for which he has not been charged and to guard against the probability that evidence of other . . . acts having little bearing on the question whether defendant actually committed the [act] charged would assume undue proportions and unnecessarily prejudice defendant in the minds of the jury, as well as [to] promote judicial efficiency by restricting proof of extraneous [acts].'" (*People v. Haston* (1968) 69 Cal.2d 233, 244.)

No evidence of Rulon's "character" – his disposition to use bad language or to have affairs with his partners' wives – was offered to prove he had used bad language

---

[3] Evidence Code section 1101 provides: "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act. [¶] (c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

or had an affair on a specific occasion. (Cf. *Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 850-851 [evidence of disposition to negligence inadmissible to show negligence on specific occasion].) The evidence to which Rulon now objects was offered rather to show he was a terrible police chief or that he qualified as a psychotic megalomaniac. It was the basis of these contentions.

Rulon next asserts this evidence should not have been admitted because it was irrelevant; specifically, it was irrelevant to his retaliation claim because Parrish either did not know about any of the incidents or did not rely on them in his decision to fire Rulon. Finally, it was prejudicial because it was highly inflammatory and should therefore have been excluded.

Evidence Code section 350 provides, "No evidence is admissible except relevant evidence."[4] Evidence Code section 351 provides, "Except as otherwise provided by statute, all relevant evidence is admissible."

In his opening brief, Rulon discussed each of these items of evidence in terms of their bearing on his retaliation claim. But until the court granted a nonsuit, when the trial was almost over, there were two other issues before the jury: Rulon's claims for defamation and for intentional infliction of emotional distress. Rulon's discussion completely ignored these two claims.

"Defamation is an invasion of the interest in reputation." (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645.) A plaintiff places his reputation at issue when he or she sues for defamation if only because a jury may award damages for injury to reputation. If defamation is proved, a jury must decide whether to award merely nominal damages (see CACI No. 1704), as would be appropriate if, for example, a plaintiff did not have much of a reputation to injure. (See Rest.2d Torts, § 620, com. a, pp. 317-318.)

_____

[4] Evidence Code section 210 defines "relevant evidence" as "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

7

The evidence was therefore – at the very least – clearly relevant to the damages element of Rulon's defamation cause of action, regardless of whether it was relevant to the retaliation claim. Some of it would also be relevant to the truth of the statement that Rulon was a psychotic megalomaniac.[5] Evidence he was a foul-mouthed bully was also relevant to counteract the testimony in the plaintiff's case that Rulon never (or rarely) swore, never spoke disrespectfully to or of women, never behaved badly toward subordinates or threatened anyone.

Moreover, the evidence was relevant to Rulon's retaliation claim. (See *Pugh v. See's Candies, Inc.* (1988) 203 Cal.App.3d 743 (*Pugh*).) The appellant in *Pugh* made the identical argument that Rulon makes here: the instances of conflict with other employees should have been excluded because the person who fired him was not aware of them at the time of termination.[6] (*Id.* at p. 756.) The reviewing court disagreed: "appellant's character or personality in the workplace was in issue under the substantive law and the pleadings in the case." (*Id.* at p. 757.) "Specific acts of misconduct are admissible to show that an employee is unfit or incompetent for the job." (*Ibid.*) "The specific incidences revealed the reasons for the negative attitude of other employee

---

[5] One of the major problems with the defamation claim was that while psychosis has and has had a medical definition, although not a consistent or universally accepted one, "megalomania" or "megalomaniac" does not. (See Diagnostic and Statistical Manual of Mental Disorders Text Revision (4th ed. 2000) American Psychiatric Association, at p. 297 (DSM). The latest version of the DSM, the fifth, was published after the Rulon trial concluded.) Several witnesses testified about the different meanings they ascribed to this phrase. At one point, counsel and the court discussed putting an assortment of dictionary definitions of "megalomaniac" before the jury. Because the cause of action was dismissed on nonsuit, this measure became unnecessary.

The defense made a summary judgment motion in April 2010. One of the grounds for summary judgment on the defamation cause of action was that the statement was opinion, not fact. The trial court denied the motion as to this cause of action.

Whether a statement is a "provably false factual assertion" is a question of law for the court. (*Moyer v. Amador Valley J. Union High School Dist.* (1990) 225 Cal.App.3d 720, 724.) Agreeing with Rulon, who opposed the motion, the trial court held that triable issue of fact existed as to whether Rulon actually was a psychotic megalomaniac, thereby setting the stage for evidence proving the truth of the statement. In view of the shifting medical definitions of "psychotic" and the lack of any medical definition of "megalomania" at all, it is no wonder that a great deal of defense testimony focused on Rulon's purported bizarre or overbearing behavior. (See *Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 580 [statement by parent about coach's effect on child's health different from statement by health professional].)

[6] Pugh also objected, as does Rulon, that this evidence "smear[ed] appellant's character." (*Pugh, supra,* 203 Cal.App.3d at p. 756.)

8

witnesses toward appellant, and [the person who fired him] was aware of their negative attitude."  (*Ibid.*)

Rulon dismisses *Pugh* because the appellate court initially pointed out plaintiff's counsel's failure to object to the evidence during the trial.  (*Pugh, supra,* 203 Cal.App.3d at p. 756.) While this is true, the *Pugh* court went on to analyze the evidence at some length, thereby providing an alternate holding.  (*Id.* at p. 757.)  Rulon's assertion that *Cotran v. Rollins Hudig Hall International, Inc.* (1998) 17 Cal.4th 93 disapproved *Pugh* is incorrect.  The issue in *Cotran* is whether an employer avoids liability for terminating an implied contract to terminate only for good cause by showing a good-faith belief in the employee's misconduct or only by showing the misconduct actually occurred.  (*Id.* at pp. 107, 109.)  The Supreme Court did not disapprove *Pugh*; on the contrary, it cited the case with approval several times.  (*Id* at pp. 100, 101-102, 106.)

As for excluding the testimony under Evidence Code section 352[7] as more prejudicial than probative, "[t]he prejudice that exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice that naturally flows from relevant evidence.  The prejudice referred to in this section applies to evidence that uniquely tends to evoke an emotional bias against the defendant and that has very little effect on the issues.  [Citation.]  Further, the prejudice must *substantially* outweigh the probative value.  [Citation.]  [¶]  In deciding whether the probability of *substantial* danger of prejudice *substantially* outweighs probative value, trial courts enjoy broad discretion.  Accordingly, "'[a] trial court's exercise of discretion 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'''  [Citation.]"  (*Scott v. C.R. Bard, Inc., supra*, 231 Cal.App.4th at pp. 782-783; see *People v. Waidla* (2000) 22

---

[7]  Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Cal.4th 690, 724 [evidence presented "no intolerable risk" to proceeding's fairness or reliability of outcome].)

In view of the relentlessly positive picture of Rulon painted during his case-in-chief, we cannot say the court abused its discretion in allowing in evidence of an entirely different kind of person. The jury was entitled to hear both kinds of opinions about him and decide for itself which was more believable. "Prejudicial" does not mean "'damaging' to a party's case." It means evoking an emotional response in the jurors unconnected with the issues. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 597.) Whether Rulon said or did the things to which he objects on appeal was certainly probative in both the retaliation and defamation causes of action.

A court abuses its discretion by exceeding the bounds of reason under all the circumstances. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) The complaining party bears the burden of proof and must show a clear case of abuse and a resulting miscarriage of justice. (*Ibid*.) The trial court decided this evidence was not *unduly* prejudicial, and we cannot say its decision was arbitrary, capricious, absurd, or exceeded the bounds of reason.

## II.        Hearsay Evidence

Rulon also asserts the trial court impermissibly allowed hearsay testimony about why four officers left the Colton Police Department. This subject was explored during Rulon's case-in-chief. Another officer testified as to his own thoughts about quitting the department during the defense case and to what he had told Parrish about two other officers' reasons for quitting. Rulon elicited testimony from a defense witness that two of the high-ranking officers who left went to other police departments as chiefs.

Rulon's discussion of the admission of hearsay evidence in the argument section of his opening brief is insufficient to invoke review from us. He simply lists 20 or so times he objected on hearsay grounds, by referring to pages in the reporter's

10

transcript.  "One cannot simply say the court erred, and leave it up to the appellate court to figure out why."  (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.)

The only specific instances of testimony to which he refers, in his statement of facts, concern three statements by witnesses regarding the departures of several officers during Rulon's tenure.  In two of the three instances, the trial court overruled the hearsay objection on the basis of Evidence Code section 1250, subdivision (a)(1), the state-of-mind exception.[8]  In each of these instances, the court carefully explained to the jury that the evidence was being admitted as evidence of the declarant's state of mind.  In the third instance, the court did not give the basis for overruling the objection, but it seems likely the reason was the same.

The court correctly ruled on the hearsay objections.  Police department morale under Rulon was an issue in the case; the officers' motives for leaving were therefore relevant to the extent they bore on morale.  In each case, the statements were offered to illustrate the perception of people leaving the force.  Two officers told the witness they left because they perceived the department to be in chaos because of Rulon.[9]  Another officer told the witness he left because he felt the chief had developed a grudge against him, he would never advance in the department, and he was tired of fighting.  The third witness testified to the anguish of a senior officer ordered to fire other officers.  "It was just killing him.  And he ended up having to leave."  (See *People v. Ortiz* (1995) 38 Cal.App.4th 377, 389-390.)

In each case, the testimony reflected the declarants' mental states and motives, which, in turn, supported the City of Colton's version of morale provides being a factor in Rulon's firing.  They were not offered to show the department actually *was*

---

[8] Evidence Code section 1250, subdivision (a)(1) provides:  "Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when:  [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action."

[9] Rulon elicited this same testimony from another witness on cross-examination.

11

chaotic or that the chief actually *had* a grudge against an officer, but that there was a perception problem that affected morale, and that Parrish heard about it. Although the jury ultimately did not reach this issue, the evidence was relevant at the time it was admitted. Moreover, in light of the similar testimony elicited from other witnesses on the same subject, Rulon has not shown how the exclusion of these three statements would have caused a result more favorable to him. (See *Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799; Evid. Code, § 353.)

**III.        Prejudice and Sufficiency of the Evidence**

Rulon's argument, at its core, is that if the hearsay, inflammatory, and "character" evidence had not been admitted, the jury would have found that Colton had retaliated against him. In other words, without this negative evidence, there was insufficient evidence to sustain the verdict. (Cf. *Howard v. Owens Corning, supra,* 72 Cal.App.4th at p. 630 [appeal from denial of directed verdict equivalent to contending evidence insufficient to support verdict].)

Rulon's brief strives to create the impression that the defense case was largely character assassination, while his took the high road and dwelt on the issues. In reality, the knives were out on both sides. The jury was carefully instructed on the elements of the retaliation claim, and it was also told that the defamation and emotional distress claims were no longer in the case. "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions." (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.) We must therefore assume that the jurors considered only "the evidence that affected Daryl Parrish's decision in determining whether [Rulon's] termination was wrongfully motivated," disregarded the evidence bearing on psychotic megalomania, which was no longer pertinent, and gave all the sniping the weight it deserved when they made their findings.

12

Rulon was an at-will employee. The City of Colton could fire him for any reason – or no reason. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 351; Lab. Code, § 2922.) What it could not do is fire Rulon for blowing the whistle on the councilman. For Rulon to prevail on the first step of a retaliation claim, he had to convince the jury he was fired because he reported the councilman's misdeeds to the district attorney. (See *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138-139 [plaintiff must show engagement in protected activity, adverse employment action, causal link between protected activity and adverse action].) Only if Rulon could make this showing would the burden shift to his employer to show it had a nonpretextual reason for firing him. (See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68.) The City of Colton did not have to prove it had a good reason to fire him until that point.

The jury did not reach the second phase. It decided, in effect, that Rulon had not shown a causal link between reporting the councilman and getting fired. Parrish testified he did not fire Rulon for reporting the councilman, and the jury was entitled to believe this testimony.[10] (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of single witness sufficient].) Parrish's actual reasons for firing Rulon, while relevant at trial because of the employer's potential burden of proof, are moot at this point in light of the jury's ultimate decision. The jury did not reach the part of the special verdict that would have entailed shifting the burden of proof to the employer.

We do not reweigh evidence that a jury has already weighed. Instead, we look to see whether any substantial evidence supports a finding of fact. (See *Ng v. Hudson* (1977) 75 Cal.App.3d 250, 263, overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) We conclude it did.

---

[10] Rulon reported the councilman to the district attorney in June 2006. He was put on leave in March 2007 and fired in April.

13

**IV.          Rebuttal Evidence**

"[T]he court is vested with discretion over the scope of rebuttal, and its ruling will not be disturbed on appeal absent abuse of discretion." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators, supra,* 226 Cal.App.4th at p. 22.)  "Rebuttal evidence is generally defined as evidence addressed to the evidence produced by the opposite party and does not include mere cumulative evidence of the plaintiff's case in chief.  [Citation.]" (*Edgar v. Workmen's Comp. App. Bd.* (1966) 246 Cal.App.2d 660, 665.)  Simply reiterating evidence that was admitted during the case-in-chief or offering to introduce evidence that should have been part of the case-in-chief is not proper rebuttal.  (See *County of Monterey v. W.W. Leasing Unlimited* (1980) 109 Cal.App.3d 636, 645; *Lipman v. Ashburn* (1951) 106 Cal.App.2d 616, 620.)

On appeal, Rulon complains that he was not allowed to present rebuttal witnesses to testify on the following subjects discussed in the defense case:  Rulon verbally abused his wife during a social gathering of officers and their wives; Rulon threatened people; Rulon used vulgar language to refer to women; the no-confidence vote against Rulon was tainted; and police department morale was bad. [11]

Counsel argued the rebuttal issue on April 18 and 19.  The reasons the trial court gave for excluding some of the testimony Rulon wanted to use on rebuttal were (1) his witnesses had already testified on the subject or (2) the evidence should have been given during his case-in-chief.  Rulon did not file a written offer of proof as to the rebuttal evidence he wanted to present until April 24, the same day the case went to the

---

[11]     On appeal, Rulon identified three other rebuttal topics he claimed were improperly excluded: whether he challenged two people to fight him, whether he challenged Parrish's authority, and whether officers left the Colton Police Department because of him.  These topics were not raised during the hearings on the scope of rebuttal testimony, no offer of proof was made about them, and the trial court did not rule on any of them.  Rulon has therefore waived any contention the trial court erroneously excluded this evidence. (See *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 886; Evid. Code, § 354.)

14

jury. The written offer of proof is far more extensive than what he presented during oral argument and upon which the court ultimately ruled.

The trial court allowed Rulon's wife to testify on rebuttal that he had not verbally abused her at a social event; other witnesses had testified to the contrary. Rulon wanted to call three other witnesses to support her testimony. The trial court considered this cumulative, and we cannot say that was an abuse of discretion.

The vulgar language issue had been explored in depth during Rulon's case-in-chief. The specific examples he wanted to rebut had been the subject of both deposition and declaration testimony before trial. He and his witnesses were repeatedly asked on direct examination if he used offensive language to refer to women; they repeatedly denied his doing so. Rulon could have anticipated the testimony the defense was going to put on and specifically denied using these expressions.[12] Again, the trial court's ruling was within the bounds of its discretion.

The no-confidence vote by the police officers union was a major subject throughout the litigation, and it loomed especially large in the retaliation claim. Any evidence that the vote was tainted by improper influence or misrepresentations should have been proffered as part of Rulon's case-in-chief. Thus, Rulon's efforts to introduce several witnesses' testimony regarding this subject on rebuttal were correctly denied. Nevertheless, the trial court allowed one of the officers who had voted no-confidence to testify he had been misled into doing so by a superior officer, whom he considered a friend. Another officer testified on rebuttal that he had not cast a vote because he believed, after being lobbied by a superior officer, that the vote was a "sham." Again, these were calls we cannot say were unreasonable, whether we agree with them or not.

---

[12] Rulon asserted two other aspects of the vulgar language issue on appeal: testimony from his former assistant that he treated her well and did not use bad language and testimony that his Colton assistant made vulgar jokes. Neither aspect was mentioned at the hearings on the rebuttal witnesses, and the court did not rule on them. They have not been preserved as issues on appeal.

15

The morale of the Colton Police Department was likewise one of the major subjects of dispute.[13] The defense raised this issue in its opposition to one of Rulon's motions in limine, submitting deposition transcripts and a declaration addressing the dysfunctional state of the department toward the end of Rulon's tenure. He testified about morale during his own case. He cannot reasonably maintain he did not see this testimony coming. Moreover, a witness who testified during his case-in-chief spoke of the good morale in the department, and one of his rebuttal witnesses, a police officer, testified that the department had been well run under Rulon and the officers wanted him back. Rulon himself testified on the subject of morale.

Rulon testified during his own case that he had not threatened to retaliate when he was investigated in late 2006. He did not use threatening language in other specific contexts. Rebuttal evidence on the same subject was simply repetition of this prior testimony.

Rulon incorrectly maintains that one of the officers who spoke in Rulon's favor at the union meeting was not allowed to testify on rebuttal that he had been cut off before he finished his statement. The officer so testified. This same officer testified that he had not heard Rulon utter a specific threat against another officer, contradicting defense testimony from others that he had been present when the threat was made. This was the only threat specifically identified during the oral argument on rebuttal.

We find no abuse of discretion here. Rulon took six days to present his case-in-chief. Nothing in the record suggests the trial court tried to hurry him along or to restrict the testimony he could offer on any of these subjects. He had ample time to present his case-in-chief. He also had ample time to present the court with the specifics

---

[13] This subject was touched on only in passing during the arguments, so its preservation for appeal is questionable.

16

of the rebuttal evidence he wanted.  The trial court either permitted him to introduce the rebuttal testimony he now claims was excluded or had good grounds for refusing his requests.

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.